NUMBER 13-02-488-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS
 
CORPUS CHRISTI - EDINBURG 
                                                                                                                      

THE FROST NATIONAL BANK,
                                                                                                     Appellant,

v.
 
L&F DISTRIBUTORS, LTD., 
                                                                                                     Appellee.
                                                                                                                                      

On appeal from the 370th District Court of Hidalgo County, Texas.
 

 OPINION ON REHEARING

Before Justices Hinojosa, Yañez and Garza
Opinion by Justice Garza
 
In an order dated July 18, 2003, we granted the parties’ joint motion for rehearing.
We now withdraw our prior disposition of the case and issue the following opinion in its
place. See Tex. R. App. P. 49.3. The Frost National Bank appeals from an order awarding
final summary judgment to L & F Distributors, Ltd. on L&F’s declaratory judgment action
against Frost. We affirm. 
Background
This is a contract dispute involving the assumption of two lease agreements. The
only parties to this case are Frost and L&F. Frost (the lessor) is a bank headquartered in
San Antonio, and L&F (the assignee) is a beer distributor headquartered in McAllen. 
Williams Distributors, Inc. (the assignor) is a now-defunct beer distributor that previously
served the Corpus Christi area. 
On February 12, 2001, Frost, Williams, and L&F executed two assumption
agreements involving fourteen vehicles originally leased to Williams by Frost. The
assumption agreements substituted L&F as the lessee and released Williams and
Williams’ guarantors from their contractual responsibilities to Frost. The dispute underlying
this appeal arose a month after the assumption agreements were signed, when L&F
notified Frost of its decision to purchase the fourteen vehicles. L&F explained that each
lease agreement, which Frost had drafted, contained language allowing the lessee to
purchase the vehicles on or before the end of the lease term, provided that it give at least
ninety-days notice to Frost. Despite the language of the lease agreements, Frost refused
to sell, contending that L&F could purchase the vehicles only on the last day of the
respective lease terms, after approximately sixty months. 
On March 14, 2001, L&F filed this suit in Hidalgo County asking for a declaratory
judgment that it could purchase the vehicles as it previously attempted. Frost responded
with a motion to transfer venue, special exceptions, and its original answer. On November
7, 2001, the trial court denied Frost’s motion to transfer venue. Meanwhile, L&F continued
to correspond with Frost about buying the vehicles. The record shows that attorneys for
L&F sent letters to Frost on June 18, December 20, and December 26, 2001, each
affirming L&F’s continued desire to purchase the vehicles. The letter of December 26
included a payment of $169,874.99, which Frost promptly returned along with a letter
rejecting L&F’s payment. 
On December 28, 2001, L&F filed an amended original petition in which it claimed
entitlement to specific performance. It also filed a motion for summary judgment. On
January 15, 2002, Frost responded with an amended answer, special exceptions, and
counterclaims for declaratory relief and breach of contract. Frost also moved for summary
judgment. 
On May 29, 2002, the parties filed a Rule 11 Agreement that narrowed the scope
of their dispute. See Tex. R. Civ. P. 11. L&F promised to nonsuit its claim for specific
performance and instead pursue only a claim for declaratory judgment. In exchange, Frost
agreed that its damages would be limited to $46,836.03 in the event that it recovered from
L&F. Frost also agreed that in the event of L&F’s recovery, it would tender title to the
vehicles no later than ten days after receiving $156,599.53 plus interest at the rate of six
percent per annum from September 16, 2001 to date. 
On July 8, 2003, the trial court granted L&F’s motion for partial nonsuit, declared
that as a matter of law, Frost breached the leases on September 16, 2001, and denied
Frost’s motion for summary judgment. The court also awarded L&F attorney’s fees in the
amount of $41,400.61. Frost now appeals to this Court. 
1. Improper Venue
          In its first issue, Frost raises the jurisdictional error of improper venue. Before trial,
Frost filed a motion to transfer venue, seeking to move the case either to Bexar County,
where it is headquartered, or alternatively, to Nueces County, where it contends the leases
were executed and performable. The trial court denied the motion without filing findings
of fact and conclusions of law. Frost argues the venue ruling is reversible error. 
A. Standard of Review
An appellate court must conduct an independent review of the entire record to
determine whether venue was proper in the ultimate county of suit. Ruiz v. Conoco, Inc.,
868 S.W.2d 752, 758 (Tex. 1993); see Tex. Civ. Prac. & Rem. Code Ann. § 15.064(b)
(Vernon 2002); see also Blalock Prescription Ctr., Inc. v. Lopez-Guerra, 986 S.W.2d 658,
663 (Tex. App.—Corpus Christi 1998, no pet.). This review should be conducted like any
other review of a trial court’s findings of fact and legal rulings, except that the evidence
need not be reviewed for factual sufficiency. Ruiz, 868 S.W.2d at 758; Colonial County
Mut. Ins. Co. v. Valdez, 30 S.W.3d 514, 527 (Tex. App.—Corpus Christi 2000, pet. denied). 
If there is probative evidence to support the trial court’s determination, even if the
preponderance of the evidence is to the contrary, the appellate court must uphold the trial
court’s venue determination. Valdez, 30 S.W.3d at 527; see also Ruiz, 868 S.W.2d at 758. 
Although we view the record in the light most favorable to the trial court’s ruling, we do not
defer to the trial court’s application of the law to the facts of the case. See Ruiz, 868
S.W.2d at 758.
B. Analysis
Our permissive venue statute allows a plaintiff to bring suit in the county of the
defendant’s residence or principal office or in the county in which all or a substantial part
of the events or omissions giving rise to the claim occurred. See Tex. Civ. Prac. & Rem.
Code Ann. § 15.002(a)(1) (Vernon 2002). If a defendant objects to the plaintiff’s venue
choice, the plaintiff must prove that venue is proper in the county of suit. See Tex. R. Civ.
P. 87(2)(a). If the plaintiff fails to establish proper venue, the trial court must transfer venue
to the county specified in the defendant’s motion to transfer, provided that the defendant
has requested transfer to a county of proper venue. See Tex. Civ. Prac. & Rem. Code
Ann. § 15.063 (Vernon 2002).
All properly plead venue facts are taken as true unless specifically denied by the
adverse party. Tex. R. Civ. P. 87(3)(a); Garcia v. Garza, 70 S.W.3d 362, 368 (Tex.
App.—Corpus Christi 2002, pet. granted); Blalock, 986 S.W.2d at 663. When facts are
specifically denied, the venue proponent must make prima facie proof of the denied facts. 
Tex. R. Civ. P. 87(3)(a). As an appellate court, we do not engage in a fact-finding review
by assessing the affiants’ credibility. Blalock, 986 S.W.2d at 663. If the affidavits and
attachments are challenged, however, we will determine whether they comply with the
rules of civil procedure. Id. 
L&F argues that Hidalgo County is a proper venue because all or a substantial part
of the events or omissions giving rise to its claim occurred in Hidalgo County. See Tex.
Civ. Prac. & Rem. Code Ann. § 15.002(a)(1) (Vernon 2002). Frost advances several
arguments to the contrary. 
First, Frost argues that none of the events or omissions related to the assumption
agreement should be considered in determining proper venue. Without these facts, there
is no evidence that all or a substantial part of the events and omissions occurred in Hidalgo
County. Frost contends that a contract relied upon for venue purposes must be the real
obligation forming the basis of the cause of action. See Trans-South Hydrocarbons Co.
v. Trinity Indus., Inc., 419 S.W.2d 662, 664 (Tex. Civ. App.—Dallas 1976, no writ). 
According to Frost, the “real obligations” sued upon in this case are the underlying lease
agreements, not the assumption agreements. The events related to the assumption
agreements are therefore irrelevant. 
We disagree. The assumption agreements are an integral if not indispensable
component of L&F’s cause of action. They are the “real obligations” sued upon by L&F. 
Without them, L&F would not be a party to the leases and would have no right to sue Frost
for breach of contract. See Major Invs., Inc. v. De Castillo, 673 S.W.2d 276, 279 (Tex.
App.—Corpus Christi 1984, writ ref’d n.r.e.) (“Privity is an essential element necessary to
any recovery in an action based on contract.”); see also Graham v. Turcotte, 628 S.W.2d
182, 183 (Tex. App.—Corpus Christi 1982, no writ) (same).
Besides, the provisions of the original leases could not be the “real obligations,” as
Frost asserts, because the assumption agreements terminated the original leases and
created two new contracts in their place. Both assumption agreements contain clauses
that read in relevant part:
This Agreement, the other documents executed in connection herewith, and
the Lease (as amended hereby) constitute the entire agreement between the
parties with respect to the Lease and express, embody and supercede any
previous understandings, agreements or promises (whether written or oral)
with respect to the Lease. Such documents represent the final expression
of the agreement between the parties hereto, the terms and conditions of
which cannot hereafter be contradicted by any oral understandings (if any)
not reduced to writing. 
 
We conclude that two new contracts were formed on February 12 and that they are the
“real obligations” forming the basis of L&F’s declaratory judgment action. Consistent with
Trans-South Hydrocarbons, we hold that the events and omissions related to the
assumption agreements, their negotiation, execution, performance, and alleged breaches
are relevant in determining proper venue. Trans-South Hydrocarbons, 419 S.W.2d at 664.
Frost’s second argument is that a “substantial part” of the events or omissions giving
rise to a claim cannot occur in more than one county. Contra S. County Mut. Ins. Co. v.
Ochoa, 19 S.W.3d 452, 458 (Tex. App.—Corpus Christi 2000, no pet.). According to Frost,
the most substantial events and omissions in this case took place in Nueces County, where
Frost and Williams originally executed and performed the leases, not in Hidalgo County. 
Without citing any case law and without advancing any statutory construction to support
its position, Frost questions our Court’s recent precedent in Ochoa. See id. In that case,
we held that there is no “indication in the present statute that a ‘substantial part of the
events or omissions’ may not occur in more than one county.” Id. Frost has presented no
compelling basis for overruling Ochoa. Consequently, for the same reasons articulated in
Ochoa, we reaffirm that a “substantial part” of the events or omissions giving rise to a claim
may occur in more than one county. See id. at 457-58.  
In the alternative, Frost maintains that even if there can be more than one
substantial-events-or-omissions county, none of the events or omissions that allegedly
occurred in Hidalgo County were substantial. Thus, the trial court erred in concluding that
venue was proper. We disagree. 
Before the trial court, Frost specifically denied that “all or a substantial part of the
events or omissions giving rise to the claim occurred in Hidalgo County.” As we noted in
Garcia, however, a specific denial requires more than the words “specifically deny.” 
Garcia, 70 S.W.3d at 369. In Garcia, we held that the “specific denial” of a venue fact
requires that the fact itself be denied. Id. With that in mind, we find it significant that Frost
never specifically denied L&F’s allegations that it negotiated and entered into the
assumption agreements with Frost, in part, through its headquarters in Hidalgo County. 
Frost never specifically denied that the vehicles are currently registered, maintained, and
operated in Hidalgo County and that L&F has sent all payments and correspondence to
Frost from its Hidalgo County headquarters. Frost has not specifically denied that the
assumption agreements call for all “Lease servicing and similar statements” to be directed
to L&F at its Hidalgo County headquarters and that Frost has, in fact, directed such
correspondence to L&F at that address. Furthermore, Frost has not specifically denied
that the specific events directly precipitating this lawsuit, namely L&F’s attempt to purchase
the vehicles and its communication to Frost of its interpretation of its purchase rights under
the lease agreements, occurred while L&F’s executives and attorneys were in Hidalgo
County and Frost’s representatives were in Bexar County. These facts constitute probative
evidence supporting the trial court’s venue determination. 
In its final argument, Frost contends that Old Am. County Mut. Fire Ins. Co. v.
Renfro, 90 S.W.3d 810 (Tex. App.—Fort Worth 2002, no pet.) compels reversal of the trial
court’s venue determination. In Renfro, an insurance company filed a declaratory
judgment action in Dallas County, seeking to determine whether an employee was covered
under his employer’s commercial auto liability policy. Id. at 812. The suit was prompted
by a $650,000 wrongful-death verdict rendered against the employee as the driver
responsible for a fatal accident involving his employer’s automobile. Id. at 813. The case
was transferred to Wise County on the defendant’s motion. 
On appeal, the Fort Worth Court of Appeals affirmed proper venue in Wise County,
where the automobile accident occurred, rather than Dallas County, where the insurance
policy was executed. Id. at 820. As probative evidence supporting this determination, the
appellate court referenced the following facts: the accident occurred in Wise County; the
employer gave its permission to the employee to take the vehicle, if at all, in Wise County;
and the wrongful death action had been tried in Wise County. Id. at 819. Based on these
facts and its determination that the action involved more than mere contract-formation
issues but also issues of contract interpretation given the discrete set of events occurring
in the case, namely the conditions under which the accident occurred, the court concluded
that Dallas County could not be where a substantial part of the events or omissions giving
rise to the action occurred. See id. at 819-20. 
Although we do not disapprove of Renfro’s holding, it is distinguishable from the
instant case. Here, the claim asserted by L&F concerns the interpretation of contracts, not
the circumstances of an automobile accident and the question of liability coverage given
a discrete set of events. In Renfro, the court of appeals highlighted the importance of the
particular factual circumstances under which the defendant had acquired possession of his
employer’s automobile and the circumstances under which his passenger was killed. Id.
at 819-20. This case involves no events or omissions comparable to the ones at issue in
Renfro. 
We have already found that probative evidence supports the trial court’s
determination of proper venue in Hidalgo County. Frost’s first issue is overruled. 
2. Improper Award of Declaratory Judgment
          In its second issue, Frost contends that the trial court erroneously interpreted the
lease agreements to give L&F a right to purchase the vehicles before the last day of the
sixty-month lease terms. L&F, in contrast, maintains that the trial court correctly interpreted
the relevant documents. 
A. Standard of Review
We review summary judgments de novo. Natividad v. Alexsis, Inc., 875 S.W.2d
695, 699 (Tex. 1994); Michael v. Dyke, 41 S.W.3d 746, 752 (Tex. App.—Corpus Christi
2001, no pet.); Texas Commerce Bank-Rio Grande Valley, N.A. v. Correa, 28 S.W.3d 723,
726 (Tex. App.—Corpus Christi 2000, pet. denied). To prevail, the moving party has the
burden of showing that there is no genuine issue of material fact and that it is entitled to
judgment as a matter of law. Tex. R. Civ. P. 166a(c); Cathey v. Booth, 900 S.W.2d 339,
341 (Tex. 1995) (per curiam); see also Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471
(Tex. 1991); Hartman v. Urban, 946 S.W.2d 546, 548 (Tex. App.—Corpus Christi 1997, no
writ). When both sides move for summary judgment and the trial court grants one motion
but denies the other, the appellate court should review both sides’ summary judgment
evidence, determine all questions presented, and render the judgment that the trial court
should have rendered. FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872
(Tex. 2000); State & County Mut. Fire Ins. Co. v. Macias, 83 S.W.3d 304, 306 (Tex.
App.—Corpus Christi 2002, pet. filed). When the trial court’s order granting summary
judgment does not specify the grounds relied upon, the reviewing court must affirm if any
of the theories advanced are meritorious. See Dow Chem. Co. v. Francis, 46 S.W.3d 237,
242 (Tex. 2001); State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993);
Krishnan v. Law Offices of Preston Henrichson, P.C., 83 S.W.3d 295, 303 n.4 (Tex.
App.—Corpus Christi 2002, pet. denied); Boren v. Bullen, 972 S.W.2d 863, 865 (Tex.
App.—Corpus Christi 1998, no pet.). B. Analysis
In construing a written contract, a court must ascertain the true intent of the parties
as expressed in the instrument. See Nat. Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI
Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995) (per curiam); Nixon v. First State Bank, 540
S.W.2d 817, 820 (Tex. Civ. App.—Corpus Christi 1976, writ ref’d n.r.e.); see also Forbau
v. Aetna Life Ins. Co., 876 S.W.2d 132, 133 (Tex. 1994). Contract terms are given their
plain, ordinary, and generally accepted meanings unless the contract itself shows that
particular definitions are used to replace those meanings. W. Reserve Life Ins. v.
Meadows, 261 S.W.2d 554, 557 (Tex. 1953); see also Reilly v. Rangers Mgmt., Inc., 727
S.W.2d 527, 529 (Tex. 1987); Bituminous Cas. Corp. v. Maxey, 110 S.W.3d 203, 213 (Tex.
App.—Houston [1st Dist.] 2003, pet. denied). We must attempt to give effect to all contract
provisions so that none will be rendered meaningless. Kelley-Coppedge, Inc. v. Highlands
Ins. Co., 980 S.W.2d 462, 464 (Tex. 1998). 
The interpretation of an unambiguous contract is a question of law for the court to
decide. N. M. Uranium, Inc. v. Moser, 587 S.W.2d 809, 814 (Tex. Civ. App.—Corpus
Christi 1979, writ ref’d n.r.e.); see also Perry v. Houston Indep. Sch. Dist., 902 S.W.2d 544,
547 (Tex. App.—Houston [1st Dist.] 1995, writ dism’d w.o.j.). Unambiguous contracts are
enforced as written. See, e.g., Heritage Res. v. Nationsbank, 939 S.W.2d 118, 121 (Tex.
1996). When a contract contains an ambiguity, the granting of a motion for summary
judgment is improper because the interpretation of the instrument is a question of fact for
the jury. Reilly, 727 S.W.2d at 529. Whether a contract is ambiguous is a question of law. 
See Nat. Union, 907 S.W.2d at 520; see also Vermillion Constr. Co. v. Fidelity & Deposit
Co. of Md., 526 S.W.2d 744, 748 (Tex. Civ. App.—Corpus Christi 1975, no writ). If a
written contract is worded so that it can be given a definite or certain legal meaning, then
it is unambiguous. Nat. Union, 907 S.W.2d at 520; see also Coker v. Coker, 650 S.W.2d
391, 393 (Tex. 1983); Universal CIT Credit Corp. v. Daniel, 243 S.W.2d 154, 157 (Tex.
1951). An ambiguity does not arise simply because the parties offer conflicting
interpretations. Lopez v. Munoz, Hockema & Reed, 22 S.W.3d 857, 861 (Tex. 2000); 
Highlands, 980 S.W.2d at 464. Rather, a contract is ambiguous only when application of
the pertinent rules of interpretation to the face of the instrument leaves it genuinely
uncertain which one of two or more meanings is the proper meaning. Daniel, 243 S.W.2d
at 157. Parol evidence is not admissible for the purpose of creating an ambiguity. 
Highlands, 980 S.W.2d at 464; see also Nat. Union, 907 S.W.2d at 520; Daniel, 243
S.W.2d at 157; Nixon, 540 S.W.2d at 820-21. Only when a contract is first determined to
be ambiguous may the court admit extraneous evidence to determine the true meaning of
the instrument. Highlands, 980 S.W.2d at 464; see also Macias, 83 S.W.3d at 307.
In this case, we have two individual lease agreements, but they are essentially
identical. Each lease consists of four parts: (1) a two-page “master lease”; (2) a “lease
schedule” that identifies the vehicles; (3) an “optional provisions” page; and (4) an
assumption agreement. Because of their similarity, we refer to both agreements
collectively as a single lease. See, e.g., Columbia Gas Transmission Corp. v. New Ulm
Gas, Ltd., 940 S.W.2d 587, 588 n.1 (Tex. 1996) (referring to five similar contracts as one). 
The language at the heart of this dispute is found on the “optional provisions” page. 
Under the heading “Section 3. Purchase; Terminal Rental Agreement,” the document
reads:
Provided no Event of default shall have occurred and then be continuing,
Lessee shall have, by giving not less than 90 (days) prior notice to Lessor,
the right to purchase all but not less than all the Equipment on or before the
Expiration. Purchase shall be made by paying to Lessor on the last day of
such Expiration an amount in cash equal to the then Fair Market Value as
hereafter defined in this section, of such Equipment.

Although the parties disagree on when a purchase can take place, we see no ambiguity
in this provision. The first sentence states that L&F can buy the vehicles either on or
before expiration of the lease. The only qualifications are that L&F cannot buy the vehicles
if it is in default, that it must buy all the vehicles and not merely some of them, and that it
has to give Frost at least ninety-days notice of the purchase. 
          Frost contends that the second sentence conflicts with the first sentence and thus
creates an ambiguity. According to Frost, the second sentence calls for L&F to pay the
vehicles’ purchase price at the end of five years, while the first sentence allows L&F to
drive off with title to the vehicles in year one. We disagree that this creates an ambiguity,
but more fundamentally, we disagree with Frost’s reading of the second sentence. Frost’s
position is premised on the idea that the lease can end only after sixty months. The first
sentence plainly states otherwise: L&F can buy the vehicles “before” expiration. If L&F
were to purchase the vehicles before the lease’s expiration, the lease would expire before
the end of sixty months. L&F has not argued that payment comes after sixty months as
Frost contends. Rather, L&F claims that payment is made when the purchase option is
exercised. The record shows that L&F has acted consistently with this position, tendering
full payment to Frost on at least one occasion in December of 2001. 
          Frost argues that we must consider course of performance, course of dealing, and
usage in trade to determine the meaning of the purchase option clause. See Tex. Bus. &
Com. Code Ann. § 2A.202 (Vernon 1994). We disagree. Interpretation of this contract
does not necessitate any consideration of parol or other extrinsic evidence for the purpose
of altering or contradicting the plain meaning of the contested lease provision. The lease’s
language says as much. It contains a merger clause stating that the lease documents are
the complete and exclusive statement of the contract terms. In part, it reads, “[These]
documents represent the final expression of the agreement between the parties hereto, the
terms and conditions of which cannot hereafter be contradicted . . . .”
Even if the parties had not included a merger clause, we would decline to consider
any parol or extrinsic evidence because the contract language disputed in this case is
unambiguous. The purchase option clause says that L&F can buy the vehicles before the
end of the lease term. Frost’s evidence tends to show the exact opposite: that L&F can
buy the vehicles only on the last day of the lease term. Although course of performance,
course of dealing, and usage in trade can supplement or qualify the express terms of a
contract, see id., they cannot be invoked to alter and contradict the terms of an
unambiguous contract, see Sun Oil Co. v. Madeley, 626 S.W.2d 726, 732 (Tex. 1981)
(refusing to consider extrinsic evidence where lease was held unambiguous). Even if we
were to consider course of performance, course of dealing, and usage in trade and find
that these factors favor Frost, the express language of the contract still prevails. See Tex.
Bus. & Com. Code Ann. § 1-303 (Vernon Supp. 2004). Frost’s evidence simply cannot
overcome the plain meaning of the contract’s language. 
The very purpose of putting the agreement in writing is to settle its terms with finality
and to exclude all oral understandings to the contrary. Santos v. Mid-Continent
Refrigerator Co., 469 S.W.2d 24, 27 (Tex. Civ. App.—Corpus Christi 1971, writ ref’d n.r.e.). 
This is necessarily the law, for otherwise a party could destroy the value of a written
contract by mere proof of contemporaneous parol agreements. Id. Parties make their own
contracts and it is not within the province of the court to vary contractual terms in order to
protect parties from the consequences of their own oversights and failures in
nonobservance of obligations assumed. See, e.g., Provident Fire Ins. Co. v. Ashy, 162
S.W.2d 684, 687 (Tex. 1942). The courts are not at liberty to redraft the terms of a
contract while professing to construe it. Fein v. R.P.H., Inc., 68 S.W.3d 260, 267 (Tex.
App.—Houston [14th Dist.] 2002, pet. denied); see also Ashcraft v. Lookadoo, 952 S.W.2d
907, 911 (Tex. App.—Dallas 1998, no pet.). In construing contracts, courts cannot, by
implication, find terms in opposition to the express language that the parties themselves
have written into their contracts. Dallas Power & Light Co. v. Cleghorn, 623 S.W.2d 310,
311 (Tex. 1981) (citing W. T. Waggoner Estate v. Sigler Oil Co., 19 S.W.2d 27, 30 (1929)).
Frost beseeches this Court to ward off the unreasonable result of allowing L&F to
purchase relatively new vehicles for twenty percent of their original market value. We
agree that courts should avoid when possible and proper any construction of a contract
that is unreasonable, inequitable, and oppressive. See Reilly, 727 S.W.2d at 529; see also
Swoboda v. Swoboda, 17 S.W.3d 276, 279 (Tex. App.—Corpus Christi 2000, no pet.);
Horizon Resources, Inc. v. Putnam, 976 S.W.2d 268, 270 (Tex. App.—Corpus Christi
1998, no pet.); Solis v. Evins, 951 S.W.2d 44, 50 (Tex. App.—Corpus Christi 1997, orig.
proceeding); Nuno v. Pulido, 946 S.W.2d 448, 451 (Tex. App.—Corpus Christi 1997, no
writ). Nevertheless, an “unreasonable” construction refers to one that subverts the
objective intent of the parties as manifested in the language of their contract documents
and not one that merely dashes the idiosyncratic, entrepreneurial expectations of a losing
litigant. See Temple-Eastex, Inc. v. Addison Bank, 672 S.W.2d 793, 798 (Tex. 1984) (“In
Texas, a writing is generally construed most strictly against its author and in such a manner
as to reach a reasonable result consistent with the apparent intent of the parties.”);
Republic Nat'l Bank v. Northwest Nat'l Bank, 578 S.W.2d 109, 115 (Tex. 1978) (same). 
We cannot use “reasonableness” as a mandate for rewriting an unambiguous contract to
make a questionable business decision more palatable for a party seeking to avoid it.
Parties to a contract are masters of their own choices. Cross Timbers Oil Co. v.
Exxon Corp., 22 S.W.3d 24, 26 (Tex. App.—Amarillo 2000, no pet.). They are entitled to
select what terms and provisions to include in a contract before executing it. Id. And, in
so choosing, each is entitled to rely upon the words selected to demarcate their respective
obligations and rights. Id. In short, the parties strike the deal they choose to strike and,
thus, voluntarily bind themselves in the manner they choose. Fein, 68 S.W.3d at 267. We
will enforce their agreement as written. Parts Indus. Corp. v. A.V.A. Servs., 104 S.W.3d
671, 678 (Tex. App.–Corpus Christi 2003, no pet.); Pegasus Energy Group, Inc. v.
Cheyenne Petroleum Co., 3 S.W.3d 112, 121 (Tex. App.–Corpus Christi 1999, no pet.);
see also Fein, 68 S.W.3d at 267. We cannot change their agreement merely because we
do not like it or because one of the parties subsequently finds it distasteful. See Fein, 68
S.W.3d at 267; see also Cross Timbers Oil, 22 S.W.3d at 26-27. Such judicial activism
would undermine not only the sanctity afforded the contract but also the expectations of
those who created and relied upon it. See Fein, 68 S.W.3d at 267-68; see also Cross
Timbers Oil, 22 S.W.3d at 26-27.
We conclude that L&F has a right to purchase the vehicles on or before the end
of sixty months. The trial court did not err in awarding summary judgment to L&F on its
declaratory judgment action. Frost’s second and final issue on appeal is overruled. 
We AFFIRM the trial court’s final summary judgment order.               
 
_______________________
                                                                           DORI CONTRERAS GARZA,
                                                                           Justice
Opinion delivered and filed
this 11th day of December, 2003.