NUMBER 13-02-387-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG




TRANSTEXAS GAS CORPORATION,                                         Appellant,

v.

FORCENERGY ONSHORE, INC.,                                                 Appellee.




On appeal from the 329th District Court
of Wharton County, Texas.




MEMORANDUM OPINION

Before Justices Rodriguez, Castillo, and Wittig




Memorandum Opinion by Justice Castillo

         This is an action to quiet title between two successors in interest to an oil and
gas interest. Appellee Forcenergy Onshore, Inc. ("Forcenergy") brought suit against
appellant TransTexas Gas Corporation ("TransTexas") to remove a cloud on
Forcenergy's title. By five issues, TransTexas contends the trial court committed
error: (1) in granting Forcenergy's motion for summary judgment that Forcenergy
holds title to the disputed mineral interest; (2) in refusing to grant TransTexas's motion
for summary judgment that TransTexas holds title to the disputed mineral interest;
(3) by declaring that Forcenergy is the operator of the mineral interests at issue; (4) in
refusing to grant TransTexas's motion for summary judgment on the operatorship
issue; and (5) by awarding Forcenergy attorney fees under the Uniform Declaratory
Judgments Act (the "UDJA").


 We reverse and render in part and remand in part. 
I. RELEVANT FACTS
         This is a memorandum opinion. The parties are familiar with the facts. We will
not recite them here except as necessary to advise the parties of our decision and the
basic reasons for it. See Tex. R. App. P. 47.4. 
         At the heart of the parties' dispute are three related documents: (1) a "Letter
Exchange Agreement" dated September 18, 1984; (2) a "Farmout Agreement" dated
September 14, 1984; and (3) an "Assignment of Oil, Gas, and Mineral Lease" dated
October 10, 1984. The three documents memorialized an earlier agreement between
TransTexas and Forcenergy's predecessors in interest


 to exchange assignments of
equivalent mineral rights and for Forcenergy to farm out other lease interests to
TransTexas. In the Letter Exchange Agreement, Forcenergy agreed to trade its deep
rights (those minerals at a depth of more than 8,500 feet) in one leasehold for
TransTexas's shallow rights in another leasehold. At issue is title to the deep mineral
rights subject to the Letter Exchange Agreement. 
A. The Parties' Agreements
1. The Letter Exchange Agreement
         The Letter Exchange Agreement stated that it "shall evidence the agreement
made as of September 7, 1984 between [Forcenergy] and [TransTexas] relative to
lands in Wharton County, Texas." It was not filed of record. It provided in relevant
part: 
[Forcenergy] and [TransTexas] agree to exchange assignments
covering certain interests over certain lands on the following terms and
conditions. 
 
I. [Forcenergy] Assignments:
 
A.[Forcenergy] agrees to assign or cause to be assigned to
[TransTexas] the following interests in the following leases
insofar and only insofar as said leases cover depths below
8500':
 
1)An 83.75% Working Interest in and to those leases
colored red on the attached plat. 
 
2)83.75% of 75% Working Interest in and to those
leases colored blue on the attached plat. 
 
3)100% Working Interest in and to those leases
colored green on the attached plat. 

* * *
 
C.It is hereby understood and agreed that [TransTexas] must
reassign to [Forcenergy] any and all acreage which has not
been allocated to a producing or proration unit, as
prescribed or permitted by the State of Texas, or included
within a pooled unit, whichever is larger, within 3 years
from the date of the assignment. However, should
[TransTexas] establish production below 8500 feet within
the area outlined in red on the attached plat within 3 years
from the date of the assignment, then this 3 year period
shall be automatically extended for an additional 2 years. 

* * *
 
II.[TransTexas] Assignments:
 
A. [TransTexas] agrees to assign to [Forcenergy] all of its right,
title and interest in and to those lands colored yellow on the
attached plat insofar and only insofar as said leases cover
depths from the surface of the earth to 8500 feet. . . . 
 
B.It is agreed to by the parties hereto that [Forcenergy] will
reassign to [TransTexas] any and all acreage assigned to
[Forcenergy] which has not been allocated to a pooled or
proration unit, whichever is larger within 3 years from the
date of the assignment or on or before 60 days prior to the
expiration of the assigned lease(s), whichever occurs first.

         2. The Farmout Agreement
         Like the Letter Exchange Agreement, the Farmout Agreement also stated that
it "shall evidence the general terms of the agreement made September 7, 1984
between [Forcenergy] and [TransTexas] relative to lands in Wharton County, Texas." 
Like the Letter Exchange Agreement, the Farmout Agreement was not recorded of
record. It provided in relevant part: 
[TransTexas] agrees to farmout to [Forcenergy] all of its right, title and
interest in and to the leases within the Areas designated as
Areas I, II and III on the attached plat under the following general terms:
 
6)[Forcenergy] shall have the right and option to earn either
one or both of the remaining undrilled Areas by timely
commencing a Test Well (Option Well), and completing the
same as a well capable of commercial production, on each
of the then undrilled Areas in the same manner and to the
same objective depth as the Initial Test Well. 
[Forcenergy's] option to earn shall terminate unless the first
well drilled on each Area is spudded within 180 days from
completion, either as a dry hole or as a producer, of the first
Test Well (or Successive Well) on the previously drilled
block. [Forcenergy] shall earn and Conoco shall retain the
same rights as set out under the Initial Test Well above with
respect to each additional Area. 

* * *
 
This letter shall in no way be construed as the final agreement between
the parties and neither party shall have any obligations until the execution
of the formal farmout agreement. 

3. The Assignment of Oil, Gas and Mineral Lease
         The Assignment of Oil, Gas and Mineral Lease from Forcenergy to TransTexas
covering the deep rights was dated October 10, 1984 and filed of record in the
Wharton County deed records.


 It read as follows: 
[Forcenergy], for and in consideration of the sum of TEN AND NO/100
DOLLARS ($10.00), and other good and valuable consideration, the
receipt of which is hereby acknowledged, and, in further consideration of
the reservations, terms and conditions hereof, do hereby SELL,
TRANSFER, ASSIGN and CONVEY unto [TRANSTEXAS]. . . , the
following interests of the below named parties representing the entire
interest owned by each party, . . . INSOFAR AND ONLY INSOFAR as
such lease covers rights below 8,500 feet below the surface of the
earth. . . . 
 
This Assignment is further made subject to the terms and conditions of
that certain Letter Agreement dated September 18, 1984, between
[Forcenergy] and [TransTexas], of which reference is made for all
purposes and which is incorporated herein by reference to the same
extent as if a copy was attached herein in its entirety. . . . 

B. The Parties' Performance
         Forcenergy successfully produced in the shallow zone. TransTexas farmed out
drilling operations in the deep zone. Those efforts did not lead to successful
production. Years passed without any reassignment of the deep rights from
TransTexas to Forcenergy. On March 23, 2000, Forcenergy demanded that
TransTexas reassign the deep rights to Forcenergy pursuant to the Letter Exchange
Agreement. This litigation resulted. 
 C. The Claims and Cross-Claims
         Forcenergy brought suit to remove the cloud on its title to the deep mineral
rights and to quiet title, alleging disparagement of title and causes of action under the
Texas Natural Resources Code. Forcenergy later asserted in an amended petition the
right to participate in a pooled unit formed by TransTexas. Forcenergy also sought to
recover its attorney fees. TransTexas counterclaimed for slander of title against
Forcenergy. It sought a declaratory judgment that TransTexas held title to the deep
rights and that Forcenergy was not the operator of the deep rights. The trial court
severed Forcenergy's claims under the Texas Natural Resources Code. TransTexas
non-suited its slander-of-title claim. On the filing of motions for summary judgment
by both sides, the trial court denied TransTexas's claim that Forcenergy was not the
operator of the deep rights. It declared that Forcenergy held good, superior, and
equitable title to the deep rights. The trial court awarded attorney fees to Forcenergy
on the operatorship issue in the amount of $350,000.00.


 This appeal ensued. 
                               II. SUMMARY-JUDGMENT ANALYSIS
A. Summary-Judgment Grounds
         Both parties brought multiple traditional motions for summary judgment.
TransTexas asserted that: (1) TransTexas was not required to reassign the deep rights
to Forcenergy; (2) Forcenergy's claims are barred by limitations; and (3) Forcenergy
is not the operator with respect to the deep rights. Forcenergy asserted that: 
(1) Forcenergy's title in and to the deep rights is superior to TransTexas's title;
(2) Forcenergy holds title to the deep rights free and clear from any and all claims,
liens, or encumbrances arising by, through, or under TransTexas or as a result of
TransTexas's actions; (3) TransTexas's claim of title to the deep rights is wrongful and
without justification; (4) Forcenergy is entitled to removal of TransTexas's claims as
clouds or encumbrances on Forcenergy's title to the deep rights; (5) Forcenergy is
entitled to quiet title to its interest in the deep rights as against TransTexas and any
party claiming by, through, or under TransTexas; (6) Forcenergy is entitled to a
declaration that the statute of limitation does not apply to its title claims or,
alternatively, that it timely brought suit within four years of the date on which
TransTexas assumed, agreed, and bound itself to perform the reassignment obligations
under the Letter Exchange Agreement. 
B. Traditional Summary-Judgment Standard of Review
          The function of summary judgment is to eliminate patently unmeritorious
claims and defenses, not to deprive litigants of the right to a jury trial. Alaniz v.
Hoyt, 105 S.W.3d 330, 344 (Tex. App.–Corpus Christi 2003, no pet.). We review
the evidence "in the light most favorable to the nonmovant, disregarding all contrary
evidence and inferences." See KPMG Peat Marwick v. Harrison County Housing Fin.
Corp., 988 S.W.2d 746, 748 (Tex. 1995); Branton v. Wood, 100 S.W.3d 645, 646
(Tex. App.–Corpus Christi 2003, no pet.). We affirm a trial court's ruling on a
summary-judgment motion if any of the theories advanced in the motion are
meritorious. State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993). 
We review a summary judgment de novo to determine whether a party
established its right to prevail as a matter of law. Nixon v. Mr. Prop. Mgmt.
Co., 690 S.W.2d 546, 548-49 (Tex. 1985); Ortega, 97 S.W.3d at 771. In a
traditional summary-judgment motion, the movant bears the burden of showing both
no genuine issue of material fact and entitlement to judgment as a matter of law. See
Tex. R. Civ. P. 166a(c); see also Ortega, 97 S.W.3d at 771-72.  In deciding whether
there is a genuine issue of material fact, we take evidence favorable to the non-movant
as true. Ortega, 97 S.W.3d at 772. 
         When both sides move for summary judgment and the trial court grants
one motion but denies the other, we review both sides' summary-judgment evidence
and determine all questions presented. FM Props. Operating Co. v. City of Austin,
22 S.W.3d 868, 872 (Tex. 2000); Frost Nat'l Bank v. L & F Distribs.,
122 S.W.3d 922, 929 (Tex. App.–Corpus Christi 2003, pet. filed). Where the only
issue both movants presented to the trial court was a question of law, we either affirm
or render the judgment the trial court should have rendered. Tex. R. App.
P. 43.2(a),(c); Jones v. Strauss, 745 S.W.2d 898, 900 (Tex. 1988). 
C. Disposition
1. The Title Issue
         At the heart of the parties' dispute is the meaning of the following language in
the Letter Exchange Agreement: 
It is hereby understood and agreed that [TransTexas] must reassign to
[Forcenergy] any and all acreage which has not been allocated to a
producing or proration unit, as prescribed or permitted by the State of
Texas, or included within a pooled unit, whichever is larger, within 3
years from the date of the assignment. However, should [TransTexas]
establish production below 8500 feet within the area outlined in red on
the attached plat within 3 years from the date of the assignment, then
this 3 year period shall be automatically extended for an additional 2
years. 

         TransTexas does not dispute that it did not perform as contemplated by the
Letter Exchange Agreement by producing or pooling "within 3 years from the date of
the assignment." TransTexas also does not dispute that it did not reassign the deep
rights to Forcenergy after the expiration of 3 years. However, TransTexas urges, the
quoted language is a covenant.


 Forcenergy's remedy for TransTexas's failure to
perform or reassign the interest was to sue TransTexas for specific performance or
breach of contract. By the time Forcenergy filed suit, TransTexas argues, laches
barred any suit for specific performance, and the statute of limitation for breach of
contract had long run. On the other hand, if the quoted language is a condition
precedent,


 as Forcenergy contends, the condition precedent to title vesting in
TransTexas never occurred. Therefore, Forcenergy argues, Forcenergy still holds title
to the deep rights, and its equitable action to quiet title is not time barred. 
         To determine whether the language at issue is a covenant or a condition
precedent, we must ascertain the intent of the parties. Hudson v. Wakefield,
645 S.W.2d 427, 430 (Tex. 1983). We consider the parties' agreement as a whole
in determining their intent. Id. The first paragraph of both the Letter Exchange
Agreement and the Farmout Agreement reference the parties' agreement of
September 7, 1984 "relative to lands in Wharton County, Texas." Further, the parties
expressly agreed that the Assignment of Oil, Gas and Mineral Lease was "subject to
terms and conditions of that certain Letter Exchange Agreement dated September 18,
1984 between [Forcenergy] and [TransTexas]." 
         It is well settled we construe together as one contract writings simultaneously
executed by the same parties with respect to the same subject matter. Board of Ins.
Comm'rs v. Great S. Life Ins. Co., 239 S.W.2d 803, 809 (Tex. 1951); Hydro-Line
Mfg. Co. v. Pulido, 674 S.W.2d 382, 386 (Tex. App.–Corpus Christi 1984, writ ref'd
n.r.e.). Similarly, we construe together as one contract writings connected by
reference to one another. In re C & H News Co., 133 S.W.3d 642, 645-46 (Tex.
App.–Corpus Christi 2003, orig. proceeding). Accordingly, we find that all three
writings here memorialized the same agreement and formed part of the same
transaction between the same parties. We therefore construe the three writings
together. See Great S. Life Ins. Co., 239 S.W.2d at 809; see also Pulido, 674 S.W.2d
at 386; In re C & H News Co., 133 S.W.3d at 645-46.  
         The fact that both parties rely on the same authority as support for their
respective positions underscores the difficulty in deciding this case. See Rogers v.
Ricane, 772 S.W.2d. 76, 78 (Tex. 1989). The following language was at issue in
Rogers:
THIS ASSIGNMENT IS MADE SUBJECT TO THE FOLLOWING
CONDITION AND PROVISION:
 
1.All of the right, title, interest and privileges herein conveyed to and
conferred upon Western will cease and terminate and shall revert to and
revest in Superior, unless within thirty (30) days after the date hereof,
Western shall commence the actual drilling of oil and gas upon the above
described land and at a location thereon which shall satisfy any then
existing offset obligation. . . .
 
2.Western shall and hereby does assume and agree to perform and
discharge all of the [base] lease obligations, express or implied. . . . To
this end, it is recognized by the parties hereto... that there now are a
number of . . . off-set wells which Western shall protect against by the
drilling of properly located wells on the above described land, in due and
proper time, and subject to all of the applicable provisions of this
agreement. 

Id. The Rogers court found, and in fact the parties agreed, that the first paragraph
was a condition because the drilling provision had to be satisfied before title would
vest. Id. at 79. The assignee satisfied the condition by drilling a well immediately. 
Id. When the well ceased production, the assignee made no other attempt to drill on
the property. Id. Following later transactions and assignments, a dispute arose
between the parties as to the meaning of the language in the second paragraph. Id. 
The assignor contended the paragraph created a condition, arguing that the assignee
had forfeited its right to the property. Id. The assignee asserted that the paragraph
created a covenant, urging that forfeiture was not a proper remedy. Id. The court of
appeals agreed with the assignee. Id. The court pointed to the language used by the
parties in the first paragraph, which unequivocally created a condition. Id. By
contrast, the language in the second paragraph did not. Id. 
         The Rogers court also concluded that "doubts should be resolved in favor of a
covenant rather than a condition." Id. (citing Henshaw v. Tex. Nat'l Res. Found., 
216 S.W.2d 566, 570-71 (Tex. 1949)). The court further noted that "[t]he language
used by the parties to an oil and gas lease will not be held to impose a special
limitation on the grant unless it is clear and precise and so unequivocal that it can
reasonably be given no other meaning." Rogers, 772 S.W.2d at 79 (citing Fox v.
Thoreson, 398 S.W.2d 88, 92 (Tex. 1966)). The Rogers court echoed the general rule
that we avoid the forfeiture that results from finding a condition precedent if another
reasonable reading of the contract is possible. See Schwartz-Jordan, Inc. v. Delisle
Const. Co., 569 S.W.2d 878, 881 (Tex. 1976). 
         Forcenergy maintains that the language at issue in this case is closer to the
language of the first paragraph in Rogers, a condition, than it is to the second, a
covenant. Forcenergy contends that production or pooling within three years is an
"earning event" that must occur for title to be transferred permanently to TransTexas,
thereby creating a conditional conveyance. Forcenergy also points out that no
particular words are required to create a condition so long as the condition is fairly
expressed. See Hudson v. Caffey, 179 S.W.2d 1017, 1019 (Tex. Civ. App.–
Texarkana 1944, writ ref'd w.o.j.). The assignment did not result in either production
or a pooling agreement within three years, Forcenergy emphasizes. Thus, TransTexas
did not satisfy the condition. As a consequence, Forcenergy reacquired equitable title
when the period for performance expired even in the absence of any reassignment by
TransTexas. 
         TransTexas asserts that the language at issue here is closer to the second
paragraph in Rogers and creates a covenant, not a condition. TransTexas analogizes
the language "understood and agreed" in the Letter Exchange Agreement to the
covenanting language "assume and agree" in the second paragraph of the Rogers
conveyance. See Rogers, 772 S.W.2d at 79. Under this interpretation, the
proper remedy for Forcenergy would be to sue either for specific performance
or for breach of contract, both of which TransTexas argues were time-barred when
Forcenergy filed suit. See Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(1) (Vernon
2002) (providing for four-year statute of limitation on suit for specific performance of
contract for sale of real property); see also Saunders v. Alamo Soil Conservation Dist.,
545 S.W.2d 249, 253 (Tex. Civ. App.–San Antonio 1976, writ ref'd n.r.e.) ("Insofar
as a possible suit for damages resulting from breach of contract is concerned, the
breach, if any, occurred more than eight years prior to the time the suit was filed and
the cause of action is clearly barred."). 
         Generally speaking, contracting parties use terms such as "provided that," "if,"
"on condition that," to make performance specifically conditional. Landscape Design
v. Harold Thomas Excavating, 604 S.W.2d 374, 377 (Tex. Civ. App.–Dallas 1980,
writ ref'd n.r.e.). However, as Forcenergy maintains, no particular words of condition
are required so long as the condition is fairly expressed. See Hudson, 179 S.W.2d
at 1019. Nonetheless, the absence of conditional language is probative of the parties'
intent to make a promise rather than impose a condition. Hohenberg Bros. Co. v.
George E. Gibbons & Co., 537 S.W.2d 1, 3 (Tex. 1976). 
         Forcenergy counters by pointing to the "subject to" language in the Assignment
of Oil, Gas and Mineral Lease from Forcenergy to TransTexas. The assignment states:
This assignment is further made subject to the terms and conditions of
that certain Letter Exchange Agreement dated September 18, 1984,
between Forcenergy and TransTexas, of which reference is made for all
purposes and which is incorporated herein by reference to the same
extent as if a copy was attached herein in its entirety.

 Forcenergy contends that this language is analogous to the language in Rogers that
"[t]his assignment is made subject to the following conditions and provision." Thus,
Forcenergy argues, the conditional "subject to" language in the Assignment of Oil, Gas
and Mineral Lease, when read in conjunction with the "drill or pool" provisions of the
Letter Exchange Agreement, unequivocally imposes conditions to title. See Rogers,
772 S.W.2d at 78. 
         Forcenergy analogizes to the conditional conveyance created by a farmout
agreement, citing Eland v. Rowden Oil & Gas Inc., 914 S.W.2d 179, 182 (Tex.
App.–San Antonio 1995, writ denied). As the Eland court noted, "[t]he
primary characteristic of a farmout is the obligation of the assignee to drill one
or more wells on the assigned acreage as a prerequisite to the completion of
the transfer. . . ." Id. at 182, n.1 (quoting Mengden v. Peninsula Prod. Co.,
544 S.W.2d 643, 645 n.1 (Tex. 1976)). We note that farmout and related
agreements, as executory instruments, normally are not recorded at the time of
execution, since title is yet to be earned. See Westland Oil Dev. Corp. v. Gulf Oil
Corp., 637 S.W.2d 903, 911 (Tex. 1982) (Wallace, J., dissenting) ("The letter
agreement [assigning interest in farmout agreement] before us was not recorded,
therefore, we are not dealing with constructive notice."). The parties here entered into
the Farmout Agreement, dated September 14, 1984. Both the Letter Exchange
Agreement and the Farmout Agreement stated that they "shall evidence the general
terms of the agreement made September 7, 1984 between [Forcenergy] and
[TransTexas] relative to lands in Wharton County, Texas," although they related to
different leases. The language of the Farmout Agreement closely tracks what
Forcenergy urges we read into the Letter Exchange Agreement. Neither document was
recorded in the deed records, but the resemblance between the two documents ends
there. The Farmout Agreement set out with specificity what Forcenergy was required
to do to "earn" the right, title, and interest contemplated by the agreement. Its closing
paragraph unequivocally describes its executory nature: "This letter shall in no way
be construed as the final agreement between the parties and neither party shall have
any obligations until the execution of the formal farmout agreement." Under the
Farmout Agreement, Forcenergy was not required to assign the interest subject to the
farmout until TransTexas drilled and developed the mineral rights, at which time
Forcenergy would retain an overriding interest. 
         By contrast, the language used by the parties in the Letter Exchange Agreement
did not expressly delay transfer of title. Rather, the Letter Exchange Agreement
provided that TransTexas "must reassign" the interest at issue to Forcenergy if
TransTexas did not drill or pool within three years. The Letter Exchange Agreement
did not provide that Forcenergy would transfer title only after TransTexas "earned" it
by drilling or pooling within three years. Moreover, unlike the Farmout Agreement, the
Letter Exchange Agreement does not contain any language expressing its executory
nature. 
         Finally, Forcenergy contends it has the right to have title quieted in its favor
after all these years, pointing out that equitable title is the enforceable right to have
legal title transferred to the holder of the equitable title. See Neely v. Intercity Mgmt.
Corp., 623 S.W.2d 942, 950-51 (Tex. App.–Houston [1st Dist.] 1981, no writ). 
However, Forcenergy's authorities in support of a characterization of its
surviving interest under the Letter Exchange Agreement as equitable title address
the equitable rights associated with real estate conveyances. See Johnson v. Wood,
157 S.W.2d 146, 148 (Tex. 1941) (holding that on performance of payment
obligations on real estate note, equitable right ripened into superior equitable title); see
also Hall v. Rawls, 188 S.W.2d 807, 815 (Tex. Civ. App.–Texarkana 1944, writ ref'd)
(holding that interest ripened into equitable title on payment of obligation to purchase
real property conveyed in trust). For that reason, we do not find Johnson and Hall
applicable here. 
         TransTexas persuasively points out that a party cannot "reassign" an interest
it did not acquire in the first place. Forcenergy has no satisfactory rejoinder to this
interpretation of the term "reassign" as the parties used it in the Letter Exchange
Agreement. Further, reading the Letter Exchange Agreement in conjunction with the
Farmout Agreement, as we must, we conclude that the parties knew how to draft a
condition precedent when they intended to do so. We do not find the language of the
Letter Exchange Agreement to be "clear and precise and so unequivocal that it can
reasonably be given no other meaning" than that it imposed a condition. See Rogers,
772 S.W.2d at 79. To the contrary, we find that another "reasonable reading" of the
Letter Exchange Agreement is that the parties intended a covenant, not a condition. 
See Schwarz-Jordan, Inc., of Houston v. Delisle Const. Co., 569 S.W.2d 878, 881
(Tex. 1978). Forcenergy's only remedy was for specific performance or breach of
contract, which are time-barred. Accordingly, we hold that summary judgment in
Forcenergy's favor was error. We sustain TransTexas's first issue. Similarly, we hold
that denial of TransTexas's summary judgment also was error. We sustain
TransTexas's second issue. 
         2. The Operatorship Issue
         The trial court granted Forcenergy's third motion for partial summary judgment
and declared certain operating agreements to be in full force and effect. Forcenergy
did in fact move for summary judgment on the operatorship issue. However, it did
not plead for any relief relating to the operatorship of the interests at issue in this
appeal. Unpleaded causes of action cannot support a summary judgment. DeBord v.
Muller, 446 S.W.2d 299, 301 (Tex. 1969) (holding that summary judgment could not
be granted on unpleaded affirmative defense); Collard v. Interstate Northborough
Partners, 961 S.W.2d 701, 704 (Tex. App.–Tyler 1998, no pet.) (holding that plaintiff
was not entitled to summary judgment on unpleaded negligence claim). Forcenergy
argues, since TransTexas sought a declaratory judgment that Forcenergy is not the
operator, that Forcenergy is entitled, pursuant to its own motion, to a declaration that
Forcenergy is the operator without affirmatively pleading for a declaratory judgment
or other relief on the operatorship issue. We disagree. Procedurally, denying
TransTexas's motion for summary judgment that Forcenergy is not the operator is not
the same as granting Forcenergy's motion for summary judgment that Forcenergy is
the operator. Without an affirmative pleading to support summary judgment for
Forcenergy on the operatorship issue, the trial court could only deny TransTexas's
motion. It had no authority to grant Forcenergy's motion without a pleading to support
an affirmative declaration that Forcenergy is the operator. See DeBord, 446 S.W.2d
at 301. We sustain TransTexas's third issue. 
         Further, the operating agreement at issue provided that if Forcenergy "no longer
owns an interest" in the deep mineral rights, "it shall cease to be Operator without any
action by Non Operator." We conclude that our holding that Forcenergy conveyed its
interest in the deep mineral rights to TransTexas in the Letter Exchange Agreement is
dispositive of TransTexas's fourth issue. We hold that the trial court's denial of
TransTexas's motion for summary judgment that Forcenergy is not the operator of the
deep mineral rights at issue was error. We sustain TransTexas's fourth issue. 
3. The Attorney-Fee Issue
         In a declaratory judgment action, the trial court "may award costs
and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ.
Prac. & Rem. Code § 37.009 (Vernon 1997). Whether to award attorney fees
under the UDJA is within a trial court's sound discretion. Bocquet v. Herring,
972 S.W.2d 19, 21 (Tex. 1998). Prevailing-party status is not required. State
Farm Lloyds v. C.M.W., 53 S.W.3d 877, 894 (Tex. App.–Dallas 2001, pet.
denied) (citing Barshop v. Medina County Underground Water Conservation Dist.,
925 S.W.2d 618, 637-38 (Tex. 1996)). We remand this case to the trial court to
determine an equitable and just apportionment of attorney fees in view of the present
reversal. See Tex. Civ. Prac. & Rem. Code § 37.009 (Vernon 1997); see also Barshop,
925 S.W.2d at 637-38. 
III. CONCLUSION
         We sustain each of TransTexas's issues on appeal. We reverse the trial court's
declaration that Forcenergy holds title to the deep mineral rights that were the subject
of the parties' "Letter Exchange Agreement" dated September 18, 1984. We render
the judgment the trial court should have rendered, that is, a declaratory judgment that
TransTexas holds the title to the deep mineral rights. See FM Props. Operating Co.,
22 S.W.3d at 872; see also L & F Distribs., 122 S.W.3d at 929. Similarly, we reverse
the trial court's declaration that Forcenergy is the operator of the deep mineral rights
that were the subject of the parties' "Letter Exchange Agreement" dated
September 18, 1984. We render the judgment the trial court should have rendered,
that is, a declaratory judgment that Forcenergy is not the operator of the deep mineral
rights. See FM Props. Operating Co., 22 S.W.3d at 872; see also L & F Distribs.,
122 S.W.3d at 929. We reverse the trial court's judgment awarding attorney fees to
Forcenergy in the amount of $350,000.00. We remand for a redetermination of an
equitable and just apportionment of attorney fees. See Tex. Civ. Prac. & Rem.
Code § 37.009 (Vernon 1997); see also Barshop, 925 S.W.2d at 637-38. 
 
                                                               ERRLINDA CASTILLO
                                                                Justice

Opinion delivered and filed
this 26th day of August, 2004.