**FROST NATIONAL BANK, Petitioner,**

v.

**L & F DISTRIBUTORS, LTD., Respondent.**

No. 04–0074.

Supreme Court of Texas.

May 27, 2005.

David M. Gunn, Russell S. Post, Beck, Redden & Secrest, L.L.P., Houston, Frank Weathered, Dunn Weathered Coffey Rivera Kasperitis & Rodriguez, P.C., Corpus Christi, Daniel H. Byrne, Fritz Byrne Head & Harrison, LLC, Austin, Francisco Enriquez, Law Offices of Frank Enriquez, McAllen, for Petitioner.

Charles C. Murray, Lisa Powell, Atlas & Hall, L.L.P., McAllen, for Respondent.

Karen Sue Neeley, John Mark Heasley, Texas Bankers Association, Austin, for Amicus Curiae.

PER CURIAM.

This case involves the interpretation of a term equipment-lease agreement with a purchase option provision. The lessee attempted to exercise the purchase option and buy the equipment a little over a year into the five-year lease term, but the lessor refused, contending that the contract only allowed the lessee to purchase the equipment when the lease term ended. The trial court and the court of appeals agreed with the lessee's interpretation, but we agree with the lessor's. Accordingly, we reverse the court of appeals' judgment, render judgment in part for the lessor, and remand the case to the trial court for further proceedings.

Frost National Bank purchased fourteen new delivery vehicles and leased them to Williams Distributors, Inc., a beer distributor. Frost and Williams entered into a sixty-month equipment lease agreement.[1] The lease's purchase option provision, known as a terminal rental adjustment clause, or TRAC, gave the lessee (Williams) the right to purchase the vehicles by giving the lessor (Frost) ninety days' written notice and provided for payment to be made "on the last day of [the lease's] Expiration [in] an amount in cash equal to the then Fair Market Value as hereafter defined in this section, of such Equipment." The agreement then clarified that the lessor would collect an amount equal to twenty percent of the original invoice price of the vehicles when they were sold, whether to the lessee or to a third party; specifically, if the vehicles were sold to a third party, the lessor would pay the lessee any proceeds in excess of that amount, and, should the lessor receive

less than the twenty percent from the sale, the lessee would owe the difference as a final rental payment.

Just over a year into the lease term, Williams assigned the lease, with Frost's consent, to L & F Distributors, Inc., another beer distributor. Shortly thereafter, L & F notified Frost of its intent to exercise the purchase option. Before Frost responded, L & F sued Frost for a declaratory judgment, and L & F later amended its petition to add a claim for specific performance. L & F also sent Frost a letter with a payment of $169,874.99, which amounted to twenty percent of the original invoice price of the vehicles. Frost rejected and returned L & F's payment, refusing to sell the vehicles until the last day of the lease term, and also counterclaimed for declaratory relief and breach of contract when L & F stopped paying rent on the vehicles. The parties agreed to narrow the scope of the dispute to the declaratory judgment requests and to limit Frost's claim for damages. Both parties filed motions for summary judgment.

The trial court partially granted L & F's motion for summary judgment and denied Frost's motion, declaring that Frost breached the lease agreement by refusing to sell the vehicles when L & F tendered payment. The trial court also awarded L & F its attorney's fees. The court of appeals affirmed, holding that the lease agreement was unambiguous and allowed L & F, as lessee, to purchase the vehicles with proper notice at any time on or before the end of the term.[2] 122 S.W.3d 922, 933.

In construing a contract, we must ascertain and give effect to the par-

---

1. The parties actually entered into two essentially identical agreements, one concerning eight of the vehicles and one concerning the other six, but for simplicity we will refer to them as a single agreement.

2. The court of appeals also affirmed the trial court's denial of Frost's motion to transfer venue. 122 S.W.3d at 927–29. Frost does not challenge the venue ruling in this Court.

ties' intentions as expressed in the document. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex.2003); *Lopez v. Muñoz, Hockema & Reed, L.L.P.,* 22 S.W.3d 857, 861 (Tex.2000). We consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions with reference to the whole agreement. *Webster,* 128 S.W.3d at 229. We construe contracts "from a utilitarian standpoint bearing in mind the particular business activity sought to be served" and "will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive." *Reilly v. Rangers Mgmt., Inc.,* 727 S.W.2d 527, 530 (Tex.1987). If, after the pertinent rules of construction are applied, the contract can be given a definite or certain legal meaning, it is unambiguous and we construe it as a matter of law. *Webster,* 128 S.W.3d at 229. On the other hand, a contract is ambiguous if it is susceptible to more than one reasonable interpretation. *Id.*

■ The following provisions of the lease agreement, including the purchase option provision discussed above, are particularly relevant to the parties' dispute:

### MASTER EQUIPMENT LEASE AGREEMENT

. . . .

Section 2. Terms; Rental; Unconditional Obligations; Security.

A. The lease of each item shall begin on the date of the related Schedule (the "Acceptance Date") and end on the Expiration Date specified in the Schedule (the "Expiration") or on the date of any earlier or later termination hereunder (the "Termination").

. . . .

### LEASE SCHEDULE TO MASTER EQUIPMENT LEASE AGREEMENT

. . . .

C. Term · Expiration. *(60) Sixty months* (the "Expiration" or "Expiration Date").

. . . .

### Lease Schedule to Master Equipment Lease Agreement
### Optional Provisions

. . . .

Section 3. Purchase; Terminal Rental Adjustment

A. Provided no Event of default shall have occurred and then be continuing, Lessee shall have, by giving not less than ninety (90) days prior written notice to Lessor, the right to purchase all but not less than all the Equipment on or before the Expiration. Purchase shall be made by paying to Lessor on the last day of such Expiration an amount in cash equal to the then Fair Market Value as hereafter defined in this section, of such Equipment. . . .

The court of appeals held that the purchase option provision (section 3(A) of the Optional Provisions) is unambiguous. 122 S.W.3d at 931. Specifically, the court of appeals noted that the first sentence allows L & F to buy the vehicles either on or before the expiration of the lease, the only qualifications being that L & F cannot be in default, must buy all the vehicles, and must give Frost at least ninety days' notice of the purchase. *Id.* The court of appeals then held that the second sentence, which requires payment to be made "on the last day of such Expiration," does not create an ambiguity or call for payment only at the end of the sixty-month lease term. *Id.*

Were we to consider the purchase option provision in isolation, we might agree with the court of appeals' reading. However, when both sentences of the provision are properly considered in conjunction with each other and the rest of the agreement, particularly the contractual definition of

the term "Expiration," the agreement unambiguously allows L & F to purchase the vehicles only at the end of the sixty-month lease term.[3]

The court of appeals ignored pertinent language in the lease schedule when it held that, should L & F choose to exercise the purchase option before the end of sixty months, the lease would simply expire and payment would be due at the time of purchase. *Id.* The agreement specifically states that the lease ends on the "Expiration" or "Expiration Date," which occurs at sixty months. A different contractual term, "Termination," describes the agreement's being terminated on an earlier or later date. By calling for payment "on the last day of such Expiration [of] an amount in cash equal to the then Fair Market Value," the agreement provides that, should L & F give the requisite notice of its intent to exercise the purchase option, it will pay Frost at the end of the sixty-month lease term the then-fair market value of the vehicles, which will effectively come out to twenty percent of the invoice price. To reach the court of appeals' conclusion requires either substituting the word "Termination" for "Expiration" in the purchase option provision or amending the contractual definition of "Expiration," neither of which is appropriate in construing an agreement.

In addition, L & F's and the court of appeals' construction is "unreasonable, inequitable, and oppressive." *Reilly,* 727 S.W.2d at 530. Such a construction allows the lessee to terminate the lease and purchase the vehicles for the same price (twenty percent of the original invoice price) at any point during the five-year lease term with the requisite notice. At the lessee's discretion, then, the lessor would essentially have to forgo almost the entire rental value of the equipment and sell it almost new for twenty percent of its value, the same price it would receive for selling the equipment at the end of the lease term after collecting rent on it for sixty months. Bearing in mind that our primary goal is to ascertain the intent of the parties when they entered into the agreement, we find such a construction unreasonable. Because there is only one reasonable interpretation of the lease, we construe it as a matter of law.

\* \* \* \* \* \*

We hold that the lease is unambiguous and provides that, while the lessee may give notice at any time during the lease term that it intends to exercise the purchase option, the lessee can actually purchase the vehicles only at the lease's expiration, which occurs sixty months after the lease term begins. Accordingly, without hearing oral argument, Tex.R.App. P. 59.1, we reverse the court of appeals' judgment, render judgment for Frost on its declaratory judgment claim, and remand the case to the trial court for further proceedings consistent with this opinion.

---

**3.** Frost also argues that the Uniform Commercial Code, as adopted in Texas, allows us to consider course of dealing, course of performance, and usage of trade to "explain or supplement" the lease. *See* Tex. Bus. & Com. Code § 2A.202. Because the plain language of the contract is clear and supports Frost's interpretation, we need not consider such evidence for explanatory purposes.