

Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio

★ ★ ★ ★ ★ ★

## MEMORANDUM OPINION

No. 04-08-00126-CV

**UNITED ELECTRICAL CONTRACTORS, INC.**,
Appellant

v.

**SOUTHWEST SOUND AND ELECTRONICS, INC.**,
Appellee

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CI-19005
Honorable John D. Gabriel, Jr., Judge Presiding[1]

Opinion by:    Marialyn Barnard, Justice

Sitting:        Rebecca Simmons, Justice
                Steven C. Hilbig, Justice
                Marialyn Barnard, Justice

Delivered and Filed:  May 27, 2009

REVERSED AND REMANDED

Southwest Sound and Electronics, Inc. was granted a partial summary judgment awarding

it damages for its breach of contract claim against United Electrical Contractors, Inc.  A final

judgment was entered after a bench trial on the issue of attorneys' fees.  On appeal, United contends

the trial court erred by: (1) granting a traditional motion for summary judgment on Southwest's

---

[1] The Honorable Michael Peden granted a partial summary judgment, and the Honorable John D. Gabriel signed a final judgment after a bench trial regarding the issue of attorneys' fees.

breach of contract claim because a fact issue was raised with regard to the scope of work Southwest was required to perform; (2) granting a no-evidence motion for summary judgment on United's affirmative defenses of payment and compromise and settlement; and (3) awarding Southwest $25,000 in attorneys' fees. We reverse the trial court's judgment and remand the cause to the trial court for further proceedings.

## BACKGROUND

United's bid for a renovation project at an elementary school was accepted by a school district. Southwest submitted a bid of $9,231.00 to United for the intercom system portion of the project. Southwest's bid specifically stated, "SECTION(S) / SYSTEM(S): 16730 INTERCOM." The bid also referred to section 16723 of the project manual, but the project manual does not contain a section 16723. Ray Alaniz, a Southwest employee, testified that this reference was a typographical error and was intended to refer to section 16730.

United accepted Southwest's bid with a purchase order that described the work as follows:

SECTION : 16730 - INTERCOM COMPLETE INSTALLATION AND RENOVATIONS TO EXISTING INTERCOM SYSTEM AS PER DRAWINGS & SPECIFICATIONS FOR THE ABOVE REFERENCED PROJECT

In March of 2003, the contract administrator for the school district, Paul Kniestedt, sent a request to United asking it to "provide this office with a cost to provide and install 15 speakers and intercom stations in existing portable classrooms." Southwest submitted a bid to United of $6,842.76 for materials and labor to install the 15 additional speakers. United then submitted a bid to Kniestedt of $8,204.10 to add the 15 speakers, which included $6,555.00 as the amount for material and labor for the installation of the speakers.

At some point either before or after March of 2003, the school district had decided to move the portable classrooms because the anticipated attendance at the elementary school would not require their use. Kniestedt used the bid submitted by United as a basis for a change order credit in the amount of $6,555.00.[2] The change order was based on one sentence at the end of the twelve pages comprising section 16010 of the project manual requiring United to include in its base bid, "All costs to install and provide 15 each additional speakers and intercom stations in existing portable building."[3] United then processed a change order deducting $6,555.00 from its contract with Southwest based on its contention that the single sentence from section 16010 of the project manual was included in its contract with Southwest.

Upon completion of the work required by section 16730, Southwest submitted an invoice to United for $9,138.40. On July 18, 2006, Southwest's attorney sent United a demand letter for payment in the amount of $9,138.40. On October 17, 2006, Southwest's attorney sent United a

---

[2] United's President, Philip Garcia, was upset with Kniestedt, believing he had "tricked" United regarding the contract. In his deposition, Garcia stated:

> And then he turned around – and we just overlooked that one sentence in the specifications, and tricked us and flipped it to a credit. We gave him a price. And then Paul, laughing, and said, "Hey, it's going to be a credit now." And he tricked us.
>
> I don't want to say conniving. I mean, it's a nice word for conniving. But he tricked us into giving him a price of 15 additional – it says "additional speakers". It don't say the speakers and the – And then he turned it into a credit. And I said, "Paul, that's not right." And all Paul said was, with a grin, "For the good of the children."

[3] Section 16010 of the project manual contains the details regarding the electrical requirements for the project describing the work as including, "Furnishing of all required materials, equipment, tools, scaffolding, labor and transportation necessary for the complete installation of the electrical systems as shown on the drawings and as specified herein." On page twelve of section 16010, a provision entitled "Additional Materials" states:

> Include in the Base Bid:
> All costs to install and provide 5 additional communication outlet or signal locations, all required boxes and conduits as directed by the Architect.
> All costs to provide 5 additional electrical outlets, all required wiring, conduit, labor and devices as directed by the Architect.
> All costs to provide 5 additional light fixtures equal in value to Metalux Model BT-P410-32-TBW-120EB81, all required lamps, wiring, switches, conduit, labor and devices as directed by the Architect.
> All costs to install and provide 15 each additional speakers and intercom stations in existing portable buildings.

second demand letter for payment, stating that a lawsuit would be filed on October 23, 2006, if no response was received.

After Southwest had filed the underlying lawsuit, Southwest's attorney sent a third demand letter on June 5, 2007, demanding payment of $9,138.40 within thirty days. On June 20, 2007, United tendered a check in payment of the June 5, 2007 demand. On July 10, 2007, Southwest's attorney sent United's attorney a letter returning the check. The letter stated that the June 5, 2007 letter was sent in error and that the actual amount required to settle the matter was $25,000.00 based on the attorney's fees that had been incurred. United subsequently amended its answer in the underlying lawsuit to assert payment and compromise and settlement as affirmative defenses.

Southwest filed a traditional motion for summary judgment with regard to its breach of contract claim and a no-evidence motion for summary judgment with regard to United's affirmative defenses. With regard to the affirmative defenses, the no-evidence motion states that United can offer no evidence that indicates "That [United] has any excuse or other affirmative defense that excuses their performance of the contract, namely paying [Southwest]." The trial court granted summary judgment in favor of Southwest and also awarded Southwest attorneys' fees after a bench trial.

### STANDARD OF REVIEW

Courts review traditional and no-evidence motions for summary judgment de novo. *Valance Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Eastin v. Dial*, No. 04-06-00377-CV, 2009 WL 196215, at *4 (Tex. App.—San Antonio Jan. 28, 2009, no pet. h.). A no-evidence motion for summary judgment should be granted if the non-movant fails to present more than a scintilla of probative evidence to raise a genuine issue of material fact on the challenged element. *Ford Motor*

*Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *Eastin*, 2009 WL 196215, at \*4. A traditional motion for summary judgment is granted only when the movant establishes there are no genuine issues of material fact and it is entitled to judgment as a matter of law on the grounds expressly set forth in the motion. *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005). When reviewing an order granting a traditional motion for summary judgment, courts take evidence favorable to the nonmovant as true and indulge every reasonable inference from the evidence in favor of the nonmovant. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997); *Eastin*, 2009 WL 196215, at \*4.

## BREACH OF CONTRACT

The elements of a breach of contract claim are: (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of that breach. *Aquila Southwest Pipeline, Inc. v. Harmony Exploration, Inc.*, 48 S.W.3d 225, 235 (Tex. App.—San Antonio 2001, pet. denied); *Hussong v. Schwan's Sales Enterprises, Inc.*, 896 S.W.2d 320, 326 (Tex. App.—Houston [1st Dist.] 1995, no writ). United argues that summary judgment was erroneously granted because Southwest was required to perform the work required by the one sentence in section 16010 of the project manual.

In construing a written contract, we must ascertain and give effect to the parties' intentions as expressed in the document. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311-12 (Tex. 2005). We, therefore, look to the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing these provisions with reference to the whole agreement. *Id*. A contract is unambiguous, and construed as a matter of law, if we can give it a certain or definite legal meaning or interpretation. *Id*.; *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.

1983). If an appellate court is unable to harmonize the provisions and give effect to all its clauses, the contract is susceptible to more than one reasonable interpretation and it is ambiguous. *Coker*, 650 S.W.2d at 393.

Both Southwest's bid proposal and United's purchase order exclusively refer to section 16730. Accordingly, we hold the contract is unambiguous and only required Southwest to perform the work required by section 16730.

In its brief, United argues that Southwest's performance of work other than the work contained in section 16730 is evidence that it was required to perform the work in the one sentence in section 16010. Even if Southwest performed additional work, however, that performance would not change the terms of the contract or make the contractual language ambiguous. United also makes reference in its argument to the drawings and specifications; however, both Philip Garcia, United's president, and Kniestedt, the school district's contract manager, testified in their depositions that the project drawings did not contain anything about the portable buildings.

### AFFIRMATIVE DEFENSES

Southwest filed a no-evidence motion for summary judgment as to United's affirmative defense of payment and compromise and settlement. A no-evidence motion for summary judgment, however, must state the elements as to which there is no evidence. TEX. R. CIV. P. 166a(i); *Callaghan Ranch, Ltd. v. Killam*, 53 S.W.3d 1, 3 (Tex. App.—San Antonio 2000, pet. denied). If a no-evidence motion for summary judgment is not specific in challenging a particular element or is conclusory, the motion is legally insufficient as a matter of law and may be challenged for the first time on appeal. *Callaghan Ranch, Ltd.*, 53 S.W.3d at 3. United asserts in its brief that Southwest's

no-evidence motion failed to refer to the specific elements of its affirmative defenses on which Southwest alleged there is no evidence.

The only reference to United's affirmative defenses in the no-evidence motion is the statement that United can offer no evidence that indicates "That [United] has any excuse or other affirmative defense that excuses their performance of the contract, namely paying [Southwest]." This does not appear to challenge a particular element of United's affirmative defense and appears to be conclusory. Even if we were to hold that Southwest's no-evidence motion is legally insufficient as a matter of law, however, United still was required to come forward with summary judgment evidence sufficient to raise an issue of fact on each element of its affirmative defense in order to avoid the traditional summary judgment with regard to Southwest's breach of contract claim. *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984).

Payment is an affirmative defense, and the party claiming the defense of payment must establish the nature of the payment. *Garner v. Fidelity Bank, N.A.*, 244 S.W.3d 855, 861 (Tex. App.—Dallas 2008, no pet.); TEX. R. CIV. P. 94, 95. In this case, United presented evidence that it timely responded to a demand letter from Southwest's attorney by tendering a check for the total amount of the demand which was equal to the contract amount. Although Southwest presented evidence that the demand letter was sent in error, we view evidence favorable to the nonmovant as true and indulge every reasonable inference from the evidence in favor of the nonmovant. *Am. Tobacco Co.*, 951 S.W.2d at 425; *Eastin*, 2009 WL 196215, at *4. Accordingly, United presented evidence sufficient to raise an issue of fact on its defense of payment.

Southwest responds that the attorney did not have authority to send the third demand letter, asserting, "[t]he uncontested summary judgment evidence in support of Southwest Sound's summary

judgment motion conclusively establishes that the attorney sent the third demand letter in error and that she had no authority to do so." The evidence that Southwest's attorney might not have had the authority to send the third demand letter, however, only further creates fact issues regarding United's affirmative defenses. *See Ebner v. First State Bank of Smithville*, 27 S.W.3d 287, 301 (Tex. App.—Austin 2000, pet. denied) (noting denial by client and attorney that attorney had authority to settle raised fact issues). Moreover, the evidence presented by Southwest addresses only actual authority not apparent authority. *See id*. at 300 (discussing types of authority).

Southwest also responds in its brief with "other theories defeating appellant's affirmative defenses," including the absence of a meeting of the minds and unilateral mistake. Neither of these grounds, however, were mentioned in Southwest's motion and the record contains no reply to United's summary judgment response asserting these grounds.

Accordingly, we hold that United raised a genuine issue of material fact on its affirmative defense of payment sufficient to defeat summary judgment. Therefore, the trial court erred in granting summary judgment, and the award of attorneys' fees must also be reversed.

## CONCLUSION

The trial court's judgment is reversed, and the cause is remanded to the trial court for further proceedings.

Marialyn Barnard, Justice