Opinion issued July 23, 2009 












     




In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00319-CV




MASTEC NORTH AMERICA, INC. AND MASTEC, INC., Appellants

V.

EL PASO FIELD SERVICES, L.P. AND GULFTERRA SOUTH TEXAS,
L.P. F/K/A EL PASO SOUTH TEXAS, L.P., Appellees





On Appeal from the 334th District Court
Harris County, Texas
Trial Court Cause No. 2004-39579




DISSENTING OPINION

          The majority erroneously reverses the trial court’s judgment notwithstanding
the verdict rendered in favor of appellee, Enterprise South Texas, L.P., formerly
known as El Paso South Texas, L.P. (“El Paso”) in the suit of appellant, MasTec, Inc.,
against El Paso for breach of a contract. Accordingly, I respectfully dissent.
          The underlying facts of this case are undisputed. After El Paso had purchased
a 68-mile long pipeline that had been constructed in the 1940’s, it decided to remove
it and construct a new one to carry butane. El Paso solicited bids from several
pipeline contractors for the project, which was to be completed within 60 days for a
lump-sum price. MasTec then submitted its bid, which was far lower than any other
bid made by the other contractors. In its contract with El Paso, MasTec agreed
. . . at its cost, that it shall (except as otherwise provided for in the
Contract or Drawings) furnish all necessary materials, supplies,
labor, tools, equipment superintendence, apparatus and
machinery, including without limitation, transportation and all
other items necessary to perform the Work . . . .
 
(Emphasis added.) As noted by the majority, MasTec agreed to perform “everything
necessary to complete, satisfy, and discharge all Work and obligations imposed on
[it] connected with the performance of the Work,” including, the following:
Furnish all labor, equipment and materials as described in the
Specifications for all Work necessary to perform the following
applicable Work as shown on the Drawings, including but not
limited to: loading, hauling, unloading, storing, clearing,
excavating, including rock if encountered, cutting and beveling
of pipe; installing pipe or valves, where required; removing pipe
or valves, where required; welding (including tie-in and transition
welds, if required); coating, repairing coating, furnishing and
installing padding when applicable; installing concrete supports;
blow-offs, bypasses, bolting, bracing hydrostatic testing of
completed assemblies, painting of newly installed piping
assemblies and cleanup.
. . . .
 
Any Work required to complete installation of the new pipeline
but not shown as a pay item is no less included in the scope of
work for installation of the new 8-inch Butane Shuttle pipeline
and is included in [MasTec’s] lump sum proposal. Just because
an item of Work is not specifically identified, does not mean such
Work is not included in [MasTec’s] scope of Work. Any item of
Work [MasTec] knows is required for completion of the
installation but not specifically identified is to be included in
[MasTec’s] Lump Sum Proposal.(Emphasis added.) In the contract, MasTec represented that 

. . . its duly authorized representative has visited the site of the Work, is
familiar with the local and special conditions under which the Work is
to be performed and has correlated the on site observations with the
requirements of the Contract and has fully acquainted itself with the site,
including without limitation, the general topography, accessibility, soil
structure, subsurface conditions, obstructions and all other conditions
pertaining to the Work and has made all investigations essential to a full
understanding of the difficulties which may be encountered in
performing the Work, and that anything in this Contract or in any
representations, statements or information made or furnished by [El
Paso] or any of its representatives notwithstanding, [MasTec] assumes
full and complete responsibility for any such conditions pertaining to
the Work, the site of the Work or its surroundings and all risks in
connection therewith . . .



(Emphasis added.) MasTec further represented that 

 
. . . it has had an opportunity to examine, and has carefully examined, all
of the Contract documents and has fully acquainted itself with the Scope
of Work, design, availability of materials, existing facilities, the general
topography, soil structure, substructure conditions, obstructions, and all
other conditions pertaining to the Work, the site of the Work and its
surroundings; that it has made all investigations essential to a full
understanding of the difficulties which may be encountered in
performing the Work; and that anything in any of the Contract
documents or in any representations, statements or information made
or furnished by [El Paso] or its representatives notwithstanding,
[Mastec] will regardless of any such conditions pertaining to the Work,
the site of the Work or its surroundings, complete the Work for the
compensation stated in this Contract, and pursuant to the extent of
[MasTec’s] liability under this Contract, assume full and complete
responsibility for any such conditions pertaining to the Work, the site of
the Work or its surroundings, and all risks in connection therewith. In
addition thereto, [MasTec] represents that it is fully qualified to do the
work in accordance with the terms of this Contract within the time
specified.



(Emphasis added.) The bottom line is that MasTec, for a lump-sum price, agreed to
perform all work necessary to complete construction of the new pipeline. MasTec
represented that “notwithstanding” anything in the contract, or any representations
made by El Paso, MasTec had “made all investigations essential to a full
understanding of the difficulties which may be encountered” in completing the
project. Moreover, MasTec assumed “full and complete responsibility” for “all risks”
in connection with the project. 

          In its sole issue to this court, MasTec contends that the trial court erred in
concluding that “the contract shifted the risk of cost associated with unidentified
foreign crossings to MasTec.” It argues that, despite the above express terms of the
lump-sum contract, the trial court erred in granting El Paso’s motion for judgment
notwithstanding the verdict because “the contract obligated El Paso to ‘exercise[] due
diligence in locating foreign pipelines’ before any work began thereby assuring
bidders like Mastec that the foreign-crossing information El Paso provided was
reasonably accurate and reliable.” (Emphasis added.) 

          There are two statements made in two “Construction Specifications”
attachments to the contract that El Paso “will have exercised due diligence in locating
foreign pipelines” and utility line crossings. (Emphasis added.) MasTec and the
majority mistakenly label these statements of fact as “due-diligence provisions.” 
MasTec essentially argues that because El Paso did not exercise due diligence in
locating such foreign crossings, MasTec incurred considerable unforeseen expenses
in completing the project and, thus, El Paso breached the contract by failing to
compensate MasTec for these expenses above the agreed upon lump-sum price. The
majority agrees with MasTec. 

          In holding that the trial court erred in rendering its judgment notwithstanding
the verdict, the majority concludes that El Paso breached the contract by failing to
exercise due diligence in locating foreign crossings and not providing such
information to MasTec. The majority reasons that the jury’s finding that El Paso
breached the contract was not immaterial because 

. . . [A] contractor is not precluded as a matter of law from recovering
against an owner, under a breach of contract theory, for defective
specifications, notwithstanding lump-sum and pre-bid investigation
provisions in the contract, if the owner was in a better position to know
whether its specifications were sufficient for its intended scope of work
and the contract evidences that the owner made positive assurances
concerning the reliability of those specifications. Even when the
contract places the risk of differing or unexpected site conditions on the
contractor, the contractor is not, as a matter of law, required to bear a
risk that the bid documents misrepresent[] the nature and amount of the
work to be performed. 



(citations omitted).

          In support of its reasoning, the majority relies upon Hollerbach v. United
States, 233 U.S. 165, 34 S. Ct. 533 (1914); IT Corporation v. Motco Site Trust Fund,
903 F. Supp. 1106 (S.D. Tex. 1994); and Shintech Inc. v. Group Constructors, Inc.,
688 S.W.2d 144 (Tex. App.—Houston [14th Dist.] 1985, no writ). These cases are
simply not applicable because, here, the parties expressly agreed in no uncertain
terms that MasTec bore “all risks” of dealing with unanticipated conditions. Such
express language, as noted by the court in IT Corporation, is controlling:

[I]f the owner is in a better position than the contractor to assess the site
conditions, and if there is language in the contract that will justify the
court in concluding that the parties intended it, the parties can place on
the owner the risk of unexpected site conditions, even in a lump sum
contract. 

903 F.Supp. at 1127 (emphasis added).

          In placing the responsibility for the expenses incurred in working with and
around the foreign crossings on El Paso, the majority relies upon the two statements
made in the two “Construction Specifications” attachments that El Paso “will have
exercised due diligence in locating foreign pipelines” and utility line crossings. 
(Emphasis added.) However, these statements of fact are not “due diligence
provisions.” El Paso’s representations that, prior to the execution of the contract, it
“will have” exercised due diligence in locating foreign pipelines cannot be read as
imposing any contractual obligation upon El Paso to do anything further to locate
foreign pipelines after the execution of the contract by the parties. In fact, El Paso
had, prior to soliciting bids, hired a survey company to map the route of the pipeline,
and the company tried to locate the foreign crossings. Because detecting
underground plastic and fiberglass pipe is virtually impossible, the company could
not guarantee the accuracy of its survey. Nor did El Paso. It gave no positive
assurance at all regarding the number or location of foreign crossings. 

          Our primary concern in construing a written contract is to ascertain and give
effect to the intent of the parties intentions as expressed in the contract. Frost Nat’l
Bank v. L & F Distribs., Ltd., 165 S.W.3d 310, 311–12 (Tex. 2005). We must
“consider the entire writing and attempt to harmonize and give effect to all of the
provisions of the contract by analyzing the provisions with reference to the whole
agreement.” Id. at 312. Also, we must presume that the parties intended for every
clause to have some effect. Heritage Res., Inc. v. NationsBank, 939 S.W.2d 118, 121
(Tex. 1996). 

          Here, El Paso clearly wanted all work on the pipeline project to be performed
for a lump-sum price. The contract in no way placed upon El Paso the burden to
locate foreign crossings and provide that information to MasTec. MasTec agreed to
perform all work necessary to complete construction of the new pipeline for a lump-sum price. Moreover, MasTec represented that “notwithstanding” anything in the
contract, or any representations made by El Paso, MasTec had “made all
investigations essential to a full understanding of the difficulties which may be
encountered” in completing the project. 

 
 
 
 
 
 
 
 
 
 
          Justice Oliver Wendell Holmes warned, “In most contracts men take the risk
of events over which they have imperfect or no control.” Ferry v. Ramsey, 277 U.S.
88, 95, 48 S. Ct. 443, 444 (1928). This admonition is perfectly illustrated by
MasTec’s assumption of “full and complete responsibility” for “all risks” in
connection with the project. I would hold that El Paso did not breach the contract “by
failing to exercise due diligence” and that the trial court did not err in rendering its
judgment notwithstanding the verdict in favor of El Paso. Accordingly, I would
overrule Mastec’s sole issue and affirm the judgment of the learned trial judge. 

 
 
 
 
                                                                        Terry Jennings

                                                                        Justice

 
Panel consists of Justices Jennings, Keyes, and Higley.

Justice Jennings, dissenting.