Opinion issued May 6, 2010

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-07-00319-CV

———————————

Mastec North America, Inc. and Mastec, Inc., Appellant

V.

El Paso
Field Services, L.P. and Gulfterra South Texas, L.P. F/K/A El Paso South Texas,
L.P., Appellee



 



 

On Appeal from the 334th District Court 

Harris County, Texas



Trial Court Case No. 2004-39579

 



 

DISSENTING OPINION

The majority erroneously reverses the trial court’s
judgment notwithstanding the verdict rendered in favor of appellee, Enterprise
South Texas, L.P., formerly known as El Paso South Texas, L.P. (“El Paso”) in
the suit of appellant, MasTec, Inc., against El Paso for breach of a
contract.  Accordingly, I respectfully
dissent.

The underlying facts of this case are undisputed.  After El Paso had purchased a 68-mile long
pipeline that had been constructed in the 1940s, it decided to remove it and
construct a new one to carry butane.  El
Paso solicited bids from several pipeline contractors for the project, which
was to be completed within 60 days for a lump-sum price.  MasTec then submitted its bid, which was far
lower than any other bid made by the other contractors.  

          In its contract with El Paso, MasTec
agreed,

 

. . . at its cost, that it shall
(except as otherwise provided for in the Contract or Drawings) furnish all
necessary materials, supplies, labor, tools, equipment superintendence,
apparatus and machinery, including without limitation, transportation and all
other items necessary to perform the Work . . . .

 

(Emphasis
added.)  As noted by the majority, MasTec
agreed to perform “everything necessary to complete, satisfy, and discharge all
Work and obligations imposed on [it] connected with the performance of the
Work,” including, the following:

Furnish all labor, equipment and materials as
described in the Specifications for all Work necessary to perform the following
applicable Work as shown on the Drawings, including but not limited to:
loading, hauling, unloading, storing, clearing, excavating, including rock if
encountered, cutting and beveling of pipe; installing pipe or valves, where
required; removing pipe or valves, where required; welding (including tie-in
and transition welds, if required); coating, repairing coating, furnishing and
installing padding when applicable; installing concrete supports; blow-offs,
bypasses, bolting, bracing hydrostatic testing of completed assemblies,
painting of newly installed piping assemblies and cleanup.

 

. . . .

 

Any Work required to complete installation of the new
pipeline but not shown as a pay item is no less included in the scope of work
for installation of the new 8-inch Butane Shuttle pipeline and is included in
[MasTec’s] lump sum proposal.  Just because an item of Work is not
specifically identified, does not mean such Work is not included in [MasTec’s]
scope of Work.  Any item of Work [MasTec]
knows is required for completion of the installation but not specifically
identified is to be included in [MasTec’s] Lump Sum Proposal.

 

(Emphasis
added.)  In the contract, MasTec
represented that   

. . . its duly authorized
representative has visited the site of the Work, is familiar with the local and
special conditions under which the Work is to be performed and has correlated
the on site observations with the requirements of the Contract and has fully
acquainted itself with the site, including without limitation, the general
topography, accessibility, soil structure, subsurface conditions, obstructions
and all other conditions pertaining to the Work and has made all investigations
essential to a full understanding of the difficulties which may be encountered
in performing the Work, and that anything in this Contract or in any
representations, statements or information made or furnished by [El Paso] or
any of its representatives notwithstanding, [MasTec] assumes full and complete
responsibility for any such conditions pertaining to the Work, the site of the
Work or its surroundings and all risks in connection therewith . . .

 

(Emphasis added.)  MasTec further represented that 

 

. . . it has had an opportunity to
examine, and has carefully examined, all of the Contract documents and has
fully acquainted itself with the Scope of Work, design, availability of
materials, existing facilities, the general topography, soil structure,
substructure conditions, obstructions, and all other conditions pertaining to
the Work, the site of the Work and its surroundings; that it has made all
investigations essential to a full understanding of the difficulties which may
be encountered in performing the Work; and that anything in any of the
Contract documents or in any representations, statements or information made or
furnished by [El Paso] or its representatives notwithstanding, [Mastec] will
regardless of any such conditions pertaining to the Work, the site of the Work
or its surroundings, complete the Work for the compensation stated in this
Contract, and pursuant to the extent of [MasTec’s] liability under this
Contract, assume full and complete responsibility for any such conditions
pertaining to the Work, the site of the Work or its surroundings, and all risks
in connection therewith.  In addition
thereto, [MasTec] represents that it is fully qualified to do the work in
accordance with the terms of this Contract within the time specified.

 

(Emphasis
added.)  

          The bottom line is that MasTec, for a
lump-sum price, agreed to perform all work necessary to complete construction
of the new pipeline.  MasTec represented
that “notwithstanding” anything in the contract, or any representations made by
El Paso, MasTec had “made all investigations essential to a full understanding
of the difficulties which may be encountered” in completing the project.  Moreover, MasTec assumed “full and complete
responsibility” for “all risks” in connection with the project.  

          In its sole issue to this Court,
MasTec contends that the trial court erred in concluding that “the contract
shifted the risk of cost associated with unidentified foreign crossings to
MasTec.”  It argues that, despite the
above express terms of the lump-sum contract, the trial court erred in granting
El Paso’s motion for judgment notwithstanding the verdict because “the contract
obligated El Paso to ‘exercise[] due diligence in locating foreign pipelines’
before any work began thereby assuring bidders like Mastec that the
foreign-crossing information El Paso provided was reasonably accurate and
reliable.”  (Emphasis added.)  

          There are two statements made in two
“Construction Specifications” attachments to the contract that El Paso “will
have exercised due diligence in locating foreign pipelines” and utility
line crossings.  (Emphasis added.)  MasTec and the majority mistakenly label
these statements of fact as “due-diligence provisions.”  MasTec essentially argues that because El
Paso did not exercise due diligence in locating such foreign crossings, MasTec
incurred considerable unforeseen expenses in completing the project and, thus,
El Paso breached the contract by failing to compensate MasTec for these
expenses above the agreed upon lump-sum price. 
The majority agrees with MasTec. 

          In holding that the trial court erred
in rendering its judgment notwithstanding the verdict, the majority concludes
that El Paso breached the contract by failing to exercise due diligence in
locating foreign crossings and not providing such information to MasTec.  The majority reasons that the jury’s finding
that El Paso breached the contract was not immaterial because 

. . . [A] contractor is not precluded
as a matter of law from recovering against an owner, under a breach of contract
theory, for defective specifications, notwithstanding lump-sum and pre-bid
investigation provisions in the contract, if the owner was in a better position
to know whether its specifications were sufficient for its intended scope of
work and the contract evidences that the owner made positive assurances
concerning the reliability of those specifications. . . .  Even when the contract places the risk of
differing or unexpected site conditions on the contractor, the contractor is
not, as a matter of law, required to bear a risk that the bid documents
misrepresent the nature and amount of the work to be performed. 

 

(citations
omitted).

          In support of its reasoning, the
majority relies upon Hollerbach  v.
United States, 233 U.S. 165, 34 S. Ct. 533 (1914); IT Corporation v.
Motco Site Trust Fund, 903 F. Supp. 1106 (S.D. Tex. 1994); and Shintech
Inc. v. Group Constructors, Inc., 688 S.W.2d 144 (Tex. App.—Houston [14th
Dist.] 1985, no writ).  These cases are
simply not applicable because, here, the parties expressly agreed in no
uncertain terms that MasTec bore “all risks” of dealing with unanticipated
conditions.  Such express language, as
noted by the court in IT Corporation, is controlling:

[I]f the owner is in a better position than the
contractor to assess the site conditions, and if there is language in the
contract that will justify the court in concluding that the parties intended it,
the parties can place on the owner the risk of unexpected site conditions, even
in a lump sum contract. 

 

903
F.Supp. at 1127 (emphasis added).

          In placing the responsibility for the
expenses incurred in working with and around the foreign crossings on El Paso,
the majority relies upon the two statements made in the two “Construction Specifications”
attachments that El Paso “will have exercised due diligence in locating
foreign pipelines” and utility line crossings. 
(Emphasis added.)  However, these
statements of fact are not “due diligence provisions.”  El Paso’s 
representations that, prior to the execution of the contract, it “will
have” exercised due diligence in locating foreign pipelines cannot be read as
imposing any contractual obligation upon El Paso to do anything further to
locate foreign pipelines after the execution of the contract by the
parties.  In fact, El Paso had, prior to
soliciting bids, hired a survey company to map the route of the pipeline, and
the company tried to locate the foreign crossings.  Because detecting underground plastic and
fiberglass pipe is virtually impossible, the company could not guarantee the
accuracy of its survey.  Nor did El
Paso.   It gave no positive assurance at
all regarding the number or location of foreign crossings.   

          Our primary concern in construing a
written contract is to ascertain and give effect to the intent of the parties
intentions as expressed in the contract.  Frost Nat’l Bank v. L & F Distribs., Ltd.,
165 S.W.3d 310, 311–12 (Tex. 2005).  We
must “consider the entire writing and attempt to harmonize and give effect to
all of the provisions of the contract by analyzing the provisions with
reference to the whole agreement.”  Id.
at 312.  Also, we must presume that the
parties intended for every clause to have some effect.  Heritage Res., Inc. v. NationsBank,
939 S.W.2d 118, 121 (Tex. 1996).   

          Here, El Paso clearly wanted all work
on the pipeline project to be performed for a lump-sum price.  The contract in no way placed upon El Paso
the burden to locate foreign crossings and provide that information to MasTec.  MasTec agreed to perform all work necessary
to complete construction of the new pipeline for a lump-sum price.  Moreover, MasTec represented that
“notwithstanding” anything in the contract, or any representations made by El
Paso, MasTec had “made all investigations essential to a full understanding of
the difficulties which may be encountered” in completing the project. 

 

 

 

 

 

 

 

 

 

          Justice Oliver Wendell Holmes warned,
“In most contracts men take the risk of events over which they have imperfect
or no control.”  Ferry v. Ramsey,
277 U.S. 88, 95, 48 S. Ct. 443, 444 (1928). 
This admonition is perfectly illustrated by MasTec’s assumption of “full
and complete responsibility” for “all risks” in connection with the project.  I would hold that El Paso did not breach the
contract “by failing to exercise due diligence” and that the trial court did
not err in rendering its judgment notwithstanding the verdict in favor of El
Paso.  Accordingly, I would overrule
Mastec’s sole issue and affirm the judgment of the learned trial judge.  

 

 

 

 

                                                                   Terry
Jennings

                                                                   Justice

 

Panel
consists of Justices Jennings, Keyes, and Higley.

Justice
Jennings, dissenting.