**Opinion issued June 9, 2026**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-24-00843-CV**

———————————

**CARTER RUSSELL, Appellant/Cross-Appellee**

**V.**

**DANA SADLER AND DR. PERFORMANCE, LLC, Appellees/Cross-Appellants**

---

**On Appeal from the 342nd District Court**
**Tarrant County, Texas**
**Trial Court Case No. 342-348797-23**

---

**MEMORANDUM OPINION**

The parties to this case signed a contract entitled "Consulting Agreement."

The parties agree that the contract:

- has a 5 year term,

- allows for early termination upon 30 days' notice, and

- requires the company to pay the consultant a monthly fee of $10,000.

But they disagree about what happens to the $10,000 monthly fee in the event of early termination. Do those payments stop? Or do they last all five years?

This disagreement surfaced after the company gave notice of termination in the first year, and the company stopped paying the monthly fee. The consultant sued for breach of contract. In his primary argument, he says that the company paid him for most of the first year but not the rest of the 5-year term, so the company owes him $530,000. In his secondary argument, he says that he should at least recover two payments of $10,000, because he went unpaid for the last two months before the termination notice took effect. The company maintained that it owes nothing. It moved for summary judgment and sought attorney's fees under the contract's prevailing party clause.

The trial court granted the company's motion. The final judgment denies any recovery for breach of contract, but it also denies any recovery of attorney's fees despite having made the company the prevailing party. The consultant appealed on his contract claim, and the company cross-appealed in pursuit of its attorney's fees.[1]

---

[1] Pursuant to its docket-equalization authority, the Texas Supreme Court transferred this appeal from the Court of Appeals for the Second District of Texas to this Court. *See* TEX. GOV'T CODE § 73.001(a) ("[T]he supreme court may order cases transferred from one court of appeals to another at any time that, in the opinion of the supreme court, there is good cause for the transfer."). We are obligated to follow

We reverse and remand.

## Background

The facts that matter largely appear in the contract itself. The contract runs between two parties: (1) Carter Russell, and (2) Dana Sadler, individually and doing business as Dr. Performance, LLC. We will refer to them as Russell and Dr. Performance, except when quoting from the contract, which calls Russell "the Consultant" and Dr. Performance "the Company."

Entitled "CONSULTING AGREEMENT," the contract has a date of January 13, 2023. It starts with recitals, which explain that "the Company manufactures and sells certain types of automobile and truck engine enhancing components" and that "the Company desires to retain Consultant to serve as a consultant to the Company and to compensate Consultant for previous services rendered and not previously compensated by Company."

Article 1 creates a contractual engagement term lasting for five years and contemplates that the parties could renew or extend this term. Article 2 states the consulting duties to be performed, which include "acquiring additional Buyer[s] of the Company's products," finding additional investors, and "attempting to find one or more Buyers of the Company." Articles 3 and 4 address compensation. These two

that court's decisional law, but we are unaware of any conflict in the decisional law between that court and this one on the issues discussed here. *See* TEX. R. APP. P. 41.3.

3

articles drive the dispute because Russell perceives a conflict in how they handle early termination. The pertinent clauses read as follows:

3.01  Compensation. As compensation for services hereunder, the Company agrees to pay Consultant and Consultant agrees to provide consulting services from the start date until this agreement is terminated and to be paid as follows:

1.  Company shall pay Consultant the sum of $10,000.00 on the 13th of each month during the Engagement Term. This obligation shall continue during the engagement period (including all extensions thereto) as long as Consultant is providing consulting services to the Company;

2.  Company shall pay Consultant 4% of the Gross Sales Price that the Company receives from the sale of all or any part of its business to a Buyer or Buyers that Consultant identifies or introduces to the Company that results in the sale of all or any portion of the Company to the Buyer or Buyers.

. . . .

4.01  Termination.

This Agreement may be terminated at the election of either Company or Consultant, for any or no reason, upon 30 days written notice to the non-terminating party. Consultant shall be entitled to the fees set forth in Section 3.01 of this Agreement through the Engagement Term regardless of when this Agreement is terminated.

Last of all, Article 5 contains various general provisions, one of which is a prevailing party clause: "If any action at law or in equity is necessary to enforce or interpret any of the rights or obligations under this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees, costs, and necessary disbursements in addition to any other relief to which the prevailing party may be entitled."

4

Russell filed this suit for breach of contract. He alleged that Dr. Performance terminated the contract on August 18, 2023, which it had a right to do, but stopped paying him the monthly fee, which it did not. He sought over $500,000 in damages "for the remainder of the 5 years."

Dr. Performance moved for summary judgment. It asserted that the contract does not require payment of the monthly fee after termination. Further, the motion sought around $79,000 in attorney's fees for trial court work, plus conditional awards of appellate fees of $25,000 in the court of appeals, $10,000 at the petition for review stage, and $20,000 for merits briefing.

Dr. Performance submitted an order granting summary judgment for the court to sign. Although the court signed the order, it did so only after striking out the paragraphs that awarded attorney's fees. Thus, the final judgment sent both sides home with no recovery of anything. Both sides appealed.

**Interpretation of Consulting Agreement**

In his sole issue on appeal, Russell argues that the Consulting Agreement is ambiguous because sections 3.01 and 4.01 conflict, and therefore he raised a fact issue on the true intention of the parties relating to compensation. He also argues that a fact issue exists concerning the amount Dr. Performance owes him under the agreement for consulting services performed in August 2023 and September 2023,

after Dr. Performance sent notice of termination but before termination became effective.

## A. Standard of Review and Governing Law on Contract Interpretation

We review a trial court's summary judgment ruling de novo. *Mosaic Baybrook One, L.P. v. Simien*, 674 S.W.3d 234, 252 (Tex. 2023). A party moving for traditional summary judgment bears the burden to establish that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. *Id.* When determining whether the nonmovant raised a fact issue, we take as true all evidence favorable to the nonmovant, indulge every reasonable inference in favor of the nonmovant, and resolve any doubts in the nonmovant's favor. *Id.*

The dispute about the summary judgment here reduces to one of contract interpretation: Russell sees the contract as ambiguous and thus unfit for summary judgment, while Dr. Performance sees it as unambiguous.

Contract interpretation involves several familiar principles. First, courts will enforce an unambiguous contract as written, and we do not consider extrinsic evidence bearing on the parties' subjective intent. *U.S. Polyco, Inc. v. Tex. Cent. Bus. Lines Corp.*, 681 S.W.3d 383, 387 (Tex. 2023) (per curiam); *Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 681 (Tex. 2017) ("An unambiguous contract will be enforced as written, and parol evidence will not be received for the

purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports." (quotation omitted)).

Second, when construing a contract, we consider the entire agreement and, to the extent possible, harmonize and give effect to all contractual provisions so that none will be rendered meaningless. *Occidental Permian, Ltd. v. Citation 2002 Inv. LLC*, 689 S.W.3d 899, 905 (Tex. 2024); *Devon Energy Prod. Co. v. Sheppard*, 668 S.W.3d 332, 343 (Tex. 2023). If, after applying the pertinent rules of construction, the contract can be given a definite or certain legal meaning, it is unambiguous, and we construe it as a matter of law. *Frost Nat'l Bank v. L&F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam); *see Devon Energy Prod.*, 668 S.W.3d at 343.

Third, an ambiguity does not arise merely because the parties disagree and advance competing constructions of the contract. *Devon Energy Prod.*, 668 S.W.3d at 343; *see U.S. Polyco*, 681 S.W.3d at 389. Instead, a contract is ambiguous if it is "reasonably susceptible to more than one meaning" such that courts cannot give it a certain or definite legal meaning or interpretation. *Scout Energy Mgmt., LLC v. Taylor Props.*, 704 S.W.3d 544, 547–48 (Tex. 2024) (per curiam) (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). Whether a contract is ambiguous is a question of law for the court. *Id.* at 548.

Finally, "business" contracts bring into play a preference for pragmatism: courts construe contracts from a utilitarian standpoint bearing in mind the particular business activity sought to be served and avoiding unreasonable constructions when possible and proper. *Point Energy Partners Permian, LLC v. MRC Permian Co.*, 669 S.W.3d 796, 805 (Tex. 2023); *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015); *Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 63 (Tex. 2015).

**B.     Analysis**

Russell and Dr. Performance clash over sections 3.01 and 4.01. Section 3.01 provides for the $10,000 monthly fee. It then speaks to the timeline: "This obligation shall continue during the engagement period (including all extensions thereto) as long as Consultant is providing consulting services to the Company." This link between the payments and the provision of services seems to indicate that the payments come to an end when the services come to an end.

But Russell points to the words of section 4.01: "Consultant shall be entitled to the fees set forth in <u>Section 3.01</u> of this Agreement through the Engagement Term regardless of when this Agreement is terminated." In his view, this clause conflicts with section 3.01 by dictating that termination will not cut off his right to compensation. Ergo, the conflict makes the contract ambiguous, and that in turn makes the summary judgment untenable. *See Rosetta Res. Operating, LP v. Martin*,

645 S.W.3d 212, 219 (Tex. 2022) ("When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue." (quoting *Coker*, 650 S.W.2d at 394)).

Dr. Performance protests that under Russell's reading, he could have given his notice of termination as soon as the contract got underway, and he would still have a right to be paid for the full five years. Dr. Performance finds that result so absurd as to expose Russell's reading as unreasonable.

Dr. Performance further would resolve any tension between sections 3.01 and 4.01 by giving priority to section 3.01 under a pair of interpretive preferences. First, there is the preference for the more specific as controlling over the general. *See Wal-Mart Stores, Inc. v. Xerox State & Loc. Sols., Inc.*, 663 S.W.3d 569, 587 (Tex. 2023) ("Consistent with our long-established precedent that provisions should be considered together and harmonized, when possible, so that none will be rendered meaningless, a specific contract provision controls over a general one." (quotation omitted)). Second, there is the preference for the earlier as controlling over the later. *See Coker*, 650 S.W.2d at 393 (stating that when harmonizing contractual provisions, "terms stated earlier in an agreement must be favored over subsequent terms").

In our view, the harmonization canon resolves the whole problem. If there is a way to harmonize sections 3.01 and 4.01, we have an obligation to do so.

Fortunately, these two sections can coexist. The $10,000 monthly fee in section 3.01 has a specific lifespan: it runs only as long as the consulting services continue. That is the upshot of the sentence right after the one that creates the obligation to pay the $10,000 every month: "This obligation shall continue . . . as long as . . . ." Thus, when section 3.01 refers to "[t]his obligation," it means the obligation to pay the $10,000 monthly fee.

But the contract created the possibility of other fees, more like royalties on the sale of petroleum, or a realtor's commission on the sale of a house. The second payment obligation in section 3.01 is the 4% fee for finding someone who buys the business or a part of the business. Nothing in section 3.01 says that the 4% fee disappears if the consulting stops. Nor is there any economic reason for linking the 4% to consulting services. Hence, under section 4.01, the duty to pay the 4% lives on even if the consulting ceases: "Consultant shall be entitled to the fees set forth in Section 3.01 of this Agreement through the Engagement Term regardless of when this Agreement is terminated."

If Russell finds a buyer for part of the business while the Consulting Agreement is in effect, he has a right to a 4% fee on that sale, even if the parties terminate the Consulting Agreement before the sale closes. The right to these fees does not disappear with termination of the agreement.

For the preceding reasons, the termination of the agreement brought an end to Russell's right to the $10,000 monthly fee, but not the right to 4% of the gross sale proceeds from any sale to a buyer found by Russell. We conclude that we can give the Consulting Agreement a definite or certain legal meaning, and therefore the agreement is unambiguous and can be construed as a matter of law. To the extent that the trial court adopted Dr. Performance's reading of the agreement, the court ruled correctly.

This holding about contract interpretation does not resolve the entirety of Russell's contract claim. Even if he does not have a right to monthly payments for the full five years, Russell says that fact issues still exist about the amount Dr. Performance owed him. Russell submitted an affidavit as summary judgment evidence. In this affidavit, he averred that he provided consulting services to Dr. Performance throughout 2023. Dr. Performance paid him $10,000 per month. But on August 17, 2023, Dr. Performance notified Russell that it was terminating the agreement, which would become effective 30 days after the notice. He avers: "After my termination date I was not paid including for the months of August and September 2023."

Dr. Performance did not dispute this evidence. It objected to this evidence as self-serving, conclusory, and irrelevant, but the trial court did not rule on the objections. Nor were the objections any good: Russell's statement that he "was not

paid including for the months of August and September 2023" is an assertion of fact.[2] *See Chagoya v. Vilchis*, No. 01-22-00864-CV, 2024 WL 3417049, at *6 (Tex. App.—Houston [1st Dist.] July 16, 2024, no pet.) (mem. op. on reh'g) (concluding that plaintiff's statements that he loaned defendant money and paid other funds to defendant to repair plaintiff's vehicle but defendant did not repair vehicle or repay loan were "all assertions of fact, not unsupported conclusions or inferences"); *see also Eberstein v. Hunter*, 260 S.W.3d 626, 629 (Tex. App.—Dallas 2008, no pet.) (affidavit calculating amounts of unpaid contractual alimony payments for four specific time periods and stating aggregate amount of unpaid payments was not conclusory because statements recited facts based on personal knowledge).

At oral argument, Dr. Performance suggested an additional pathway to concluding that it does not owe Russell any more of the $10,000 payments. Dr. Performance pointed to the affidavit of Dana Sadler as establishing that Russell was paid up until he received the 30-day notice of termination and that he stopped performing consulting services at that point. Ergo, his failure to perform any further services means that he has no right to be paid anything more.

However, this suggested pathway runs afoul of the record.

---

[2] "An objection that an affidavit is conclusory raises a defect of substance, which can be raised for the first time on appeal." *Tex. Health Harris Methodist Hosp. Fort Worth v. Featherly*, No. 02-24-00572-CV, 2025 WL 3723946, at *15 n.18 (Tex. App.—Fort Worth Dec. 23, 2025, no pet.) (mem. op.).

Dr. Performance filed a traditional motion for summary judgment and thus had the burden of proof to establish its entitlement to judgment as a matter of law. Russell's affidavit states that he "was not paid including for the months of August and September 2023." He does not specify precisely when he performed the relevant consulting services or precisely when he received all the payments, but he also states: "I performed consulting services pursuant to the Agreement on behalf of the Defendants . . . . I was paid $10,000 a month by Defendants until I was terminated by Dana Sadler. On or about August 17, 2023, I was terminated which would be 30 days after the notice. Attached as Exhibit C is the August 17, 2023 notice of termination."

Dana Sadler's affidavit acknowledges that "[f]or eight months, Russell provided consulting services," but she does not specify precisely when he provided services or when the various payments occurred. After referring to those eight months, she goes on to say: "During this time period, I and/or Dr. Performance paid Russell his monthly consulting fee of $10,000 each month." She then "became dissatisfied with Russell's work" and provided examples of Russell's actions that led her to terminate the agreement. After reciting that she emailed the notice of termination on August 18, 2023, she indicates that Russell provided no more services after the 30-day period ran: "The termination became effective on September 17, 2023, and since that time, Russell has not provided any more consulting services to

13

Dr. Performance." None of this evidence conclusively establishes that Russell quit providing consulting services during the 30-day period between the notice (in August) and the effective date of termination (in September).

Hence, the trial court improperly granted summary judgment on the issue of the amount owed. It follows that we cannot affirm, even though we have rejected Russell's broader position about ambiguity and contract interpretation. Given the reversal on the narrower issue of the monthly fees for August and September 2023, there is no need to reach Dr. Performance's cross-appeal regarding its entitlement to attorney's fees as the prevailing party.[3] The trial court may consider the prevailing party issue afresh once there is a resolution about payments for August and September 2023.

We sustain Russell's sole issue in part.

---

[3] In particular, we do not prejudge which side would "prevail" if Russell were to win in his pursuit of two monthly payments of $10,000 despite losing on his pursuit of the monthly payments for the rest of the 5-year term. *See Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 655 (Tex. 2009) ("Whether a party prevails turns on whether the party prevails upon the court to award it something, either monetary or equitable."); *Severs v. Mira Vista Homeowners Ass'n, Inc.*, 559 S.W.3d 684, 708 (Tex. App.—Fort Worth 2018, pet. denied) (noting that "prevailing party" analysis is different for successful defendant as opposed to successful plaintiff).

## Conclusion

We reverse the trial court's summary judgment order and remand for further proceedings consistent with this opinion.


David Gunn
Justice

Panel consists of Justices Gunn, Caughey, and Morgan.