

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00018-CV

**DICEX INTERNATIONAL, INC.,**
Appellant

v.

**AMIGO STAFFING, INC.,**
Appellee

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2020CVK000091-D2
Honorable Monica Z. Notzon, Judge Presiding

Opinion by:      Lori I. Valenzuela, Justice

Sitting:      Beth Watkins, Justice
              Liza A. Rodriguez, Justice
              Lori I. Valenzuela, Justice

Delivered and Filed: March 24, 2021

AFFIRMED

Dicex International, Inc. ("Dicex") appeals from a summary judgment rendered in favor of

Amigo Staffing, Inc. ("Amigo").  We affirm.

## FACTUAL BACKGROUND

In 2009, Dicex and Amigo entered into a temporary employment services ("TES")

agreement under which Amigo provided Dicex with temporary warehouse and clerical employees.

Roberto Avila Rodriguez was assigned by Amigo to operate a forklift at a Dicex warehouse in

Laredo, Texas. In 2013, Rodriguez was injured while operating the forklift. Based on this work-related injury, Rodriguez applied for and received workers' compensation benefits from Amigo.

**PROCEDURAL BACKGROUND**

Rodriguez sued Dicex, Amigo, Panther Expedited Services, Inc. ("Panther"), and two drivers ("Ellis" and "Daly") for his alleged injuries. After Rodriguez non-suited Amigo, Dicex filed a third party petition against Amigo, alleging breach of contract and reckless and/or negligent misrepresentation, and claiming contribution. Dicex and Panther each filed motions for summary judgment against Rodriguez. In its summary judgment motion, Dicex argued that, pursuant to Texas Labor Code section 93.004(b) of the Texas Workers' Compensation Act (the "Act"), Rodriguez's claims were barred by the Act's exclusive remedy provision.[1] *See Rodriguez v. Panther Expedited Servs., Inc.*, 04-17-00291-CV, 2018 WL 3622066, at *2 (Tex. App.—San Antonio July 31, 2018, pet. denied) (mem. op.). A panel of this court held that the work-related injury upon which Rodriguez's claims were based "occurred on May 19, 2013, almost four months before the effective date of section 93.004. Thus, section 93.004(b) was not effective at the time of the injury, and therefore, is inapplicable to this case." *Id.* at *4. Because Dicex's motion for summary judgment relied only on the exclusive remedy provision of section 93.004(b), which was inapplicable, this court concluded that section could not form the basis for the summary judgment in favor of Dicex. *Id.* Therefore, the court held "the trial court erred in granting summary judgment in favor of Dicex because in its motion for summary judgment, Dicex relied on the exclusive remedy provision of the TWCA as made applicable to temporary employment services through

---

[1] Specifically, Dicex argued it produced summary judgment evidence showing that at the time of the injury, Amigo was a TES that carried workers' compensation insurance covering Rodriguez, and Dicex was Amigo's client pursuant to the TES agreement. Therefore, according to Dicex, "under Chapter 93 of the Texas Labor Code, the workers' compensation policy held by Amigo Staffing covered any injuries sustained by Rodriguez during his assignment with Dicex, and any action pursued against Dicex was barred by the exclusive remedy provision of the" Act. *Id.* at *2.

section 93.004(b) of the Labor Code, which was inapplicable due to its effective date." *Id.* at *11. This court reversed the trial court's summary judgment in favor of Dicex and remanded that portion of the matter to the trial court for further proceedings.[2] *Id.*

On remand, Amigo filed a combined traditional and no-evidence motion for summary judgment against Dicex. In its traditional motion for summary judgment, Amigo asserted its defense that Dicex's suit against Amigo was barred in its entirety by the exclusive remedy provisions of the Act pursuant to Texas Labor Code sections 408.001(a) and 417.004. In its no-evidence motion for summary judgment, Amigo asserted there was no evidence on Dicex's causes of action for breach of contract and reckless/negligent misrepresentation, or on its claim for contribution.

Dicex responded to both motions asserting Amigo failed to meet its burden of proof on its defense, and maintaining it produced evidence raising genuine issues of material fact on the challenged elements of its causes of action. The trial court rendered a take-nothing summary judgment in Amigo's favor against Dicex. After the court severed Rodriguez's claims against Dicex, Dicex filed this appeal from the summary judgment rendered in favor of Amigo.

## AMIGO'S TRADITIONAL MOTION FOR SUMMARY JUDGMENT

In its traditional motion for summary judgment, Amigo alleged (1) Dicex's breach of contract and misrepresentation causes of action and its contribution claim were barred in their entirety by the exclusive remedy provisions provided in Texas Labor Code sections 408.001(a) and 417.004, and (2) the two-year statute of limitations on Dicex's misrepresentation claim had expired.

---

[2] The *Rodriguez* court affirmed the summary judgment in favor of Panther and noted the record did not indicate the disposition of Rodriguez's claims against Ellis or Daly. *Id.* at *11 & n.1.

## A.  Standard of Review

A traditional summary judgment is proper only when the movant establishes there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  TEX. R. CIV. P. 166a(c).  A defendant who conclusively establishes an affirmative defense is entitled to summary judgment on that claim.  *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010).  Unlike a no-evidence motion, a traditional motion for summary judgment must stand on its own merits; there is no right to a traditional summary judgment by default.  *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993).  "The nonmovant has no burden to respond to a summary judgment motion unless the movant conclusively establishes its cause of action or defense."  *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam).  If the movant satisfies its burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment.  *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). "In reviewing the grant of summary judgment, we must credit evidence favoring the nonmovant, indulging every reasonable inference and resolving all doubts in [its] favor."  *Id.*

## B.  Analysis

"Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage . . . against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee."  TEX. LABOR CODE § 408.001(a).  This section limits an employer's liability for injuries sustained by its employees through the exclusive remedy provision.  Here, because Amigo provided workers' compensation insurance to Rodriguez, Rodriguez was not entitled to recover damages against Amigo in his lawsuit.  Therefore, Rodriguez non-suited Amigo.  However, Rodriguez's

negligence claim against Dicex continued after this court held Rodriguez's claim was not barred by Labor Code section 93.004(b), and Dicex, in turn, sued Amigo for indemnity and contribution.

In its motion for traditional summary judgment, Amigo relied on Labor Code section 417.004 to argue it was not liable to Dicex for reimbursement of any damages owed by Dicex to Rodriguez. Section 417.004 bars claims by third parties for reimbursement against employers who subscribe to workers' compensation insurance and provides as follows:

> In an action for damages brought by an injured employee . . . against a third party liable to pay damages for the injury or death under this chapter that results in a judgment against the third party or a settlement by the third party, *the employer is not liable to the third party for reimbursement or damages based on the judgment or settlement unless the employer executed, before the injury or death occurred, a written agreement with the third party to assume the liability.*

TEX. LABOR CODE § 417.004 (emphasis added).

Under this statute, a subscribing employer, such as Amigo, has no liability to reimburse or hold another entity, such as Dicex, harmless for a judgment or settlement resulting from injury or death of an employee in the absence of a written agreement, executed prior to the injury, expressly assuming such liability. *See Enserch Corp. v. Parker*, 794 S.W.2d 2, 7 (Tex. 1990); *Whiteco Metrocom, Inc. v. Tex. Utils. Elec. Co.*, 30 S.W.3d 421, 423 (Tex. App.—Dallas 2000, pet. denied) ("Under this statute, employers who subscribe to workers' compensation insurance are immune from liability to third parties the employee might sue for their injuries."). Therefore, Amigo is not required to indemnify Dicex unless the TES agreement is sufficient to overcome this bar. *See Remedy Intelligent Staff, Inc. v. Drake All. Corp.*, 14-16-00241-CV, 2017 WL 4440484, at *4 (Tex. App.—Houston [14th Dist.] Oct. 5, 2017, no pet.) (mem. op.) ("It is undisputed in this case that Drake's workers' compensation provider paid benefits to Lopez. Thus, to recover against Drake for 'the attorney's fees it has incurred defending Lopez'[s] lawsuit, plus whatever damages

it becomes obligated to pay, by judgment or settlement, to Lopez, Remedy must show that Drake executed a written agreement to assume such liability.").

According to Amigo, nothing in the TES agreement supports the contention that Amigo assumed the liability of Dicex or any other third party. Dicex counters that (1) there exists a question of fact on whether Amigo is obligated to protect Dicex under the agreement and (2) the agreement clearly evidences the parties' intent that Amigo indemnify Dicex.

**1. Is there an executed agreement for indemnity?**

Dicex relies only on the following language in the TES agreement to assert its entitlement to indemnity under section 417.004:

> INSURANCE COVERAGES:
> Commercial General Liability: 2,000,000.
> Workers Compensation Insurance: 2,000,000.
> CRIME: (Surety Bond): $10,000.

According to Dicex, the purpose of including such insurance coverage in the agreement was to protect Dicex from claims of assigned employees through workers' compensation insurance, and from claims from third parties for the acts of assigned employees through the commercial general liability insurance, and a $10,000.00 surety bond for criminal acts of those employees concerning the theft of merchandise Dicex handles for its clients. Dicex contends that a "sensical and logical reading of" this coverage was to protect Dicex from any such claims.

Because the TES agreement is a contract, the principles of contract construction govern its interpretation. *See Loya v. Loya*, 526 S.W.3d 448, 451 (Tex. 2017). Applying these principles, the presence of ambiguities and the interpretation of an unambiguous contract are questions of law that we review de novo. *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763 (Tex. 2018). "In construing a contract, we must ascertain and give effect to the parties' intentions as expressed in the document." *Frost Nat'l Bank v. L & F Distributors, Ltd.*, 165 S.W.3d 310, 311-12 (Tex. 2005).

"We consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions with reference to the whole agreement." *Id.* at 312.

A contract is not ambiguous simply because the parties differ on a term's meaning; the competing definitions must be reasonable for an ambiguity to exist. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). Therefore, "[i]f the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Furthermore, "surrounding facts and circumstances cannot be employed to 'make the language say what it unambiguously does not say' or 'to show that the parties probably meant, or could have meant, something other than what their agreement stated.'" *URI*, 543 S.W.3d at 757 (citations omitted). "In other words, extrinsic evidence may only be used to aid the understanding of an unambiguous contract's language, not change it or 'create ambiguity.'" *Id.* (citations omitted).

Before we consider whether the isolated language on which Dicex relies is sufficient to raise a fact issue, we must examine the TES agreement, which states in full as follows:

> BILL-RATES & TERMS:
> Amigo Staffing, Inc. will supply Dicex International throughout its operation on a Temporary/Leasing and or long term basis at a 26% Mark up for Warehouse and 24% Clerical for the first 90 days equivalent to 3 months; after this time Warehouse personnel will be at a 25 % Mark up and 16 % Mark- up for Clerical.
>
> Temp to hire will require a term of 120 days completion before transferring to Dicex International.
>
> Note: This Mark up applies on volume from our client; Amigo Staffing, Inc. requires a minimum of (4) hours per employee per day unless employee leaves job-site or customers [sic] cancels order (2) hours in advance.
>
> DIRECT PLACEMENT:
> Amigo Staffing, Inc. will provide direct placement services at 8% of the initial starting salary, with a 30 day Guarantee. The services include Criminal

Investigation, Previous Employment Verification, Verify Degrees/Licenses, Skills Assessments and Drug Screening.

INSURANCE COVERAGES:
Commercial General Liability: 2,000,000.
Workers Compensation Insurance: 2,000,000.
CRIME: (Surety Bond): $10,000.

DISCLAIMER:
When you require one of our employees to operate a vehicle, regardless of who owns the vehicle, client will insure the vehicle and the employee for any and all liability associated with the operation and/or the control of the vehicle. Further, client agrees to indemnify and hold our employee and Amigo Staffing, Inc., harmless from any and all liability that may arise from the operation and/or control of the vehicle by our employee.

SAFETY IS ALWAYS FIRST:
Please select the personnel Protective Equipment required for Dicex, International.
Safety Glasses_ Safety Vests_ Hard Hat_ Safety Boots_
Back Brace_ Safety Gloves_ Hearing Protection_ Dust Mask_
Additional _____

The TES agreement unambiguously requires Amigo to carry certain levels of insurance, including workers' compensation insurance for its employees such as Rodriguez. However, that requirement alone does not create a question of fact on whether the parties intended Amigo to indemnify Dicex because the agreement contains no express language requiring Amigo to indemnify Dicex. Therefore, Dicex's contention that the coverage levels as stated in the agreement may be construed as evidencing an intent by Amigo to indemnify Dicex or raising a fact question on whether Amigo agreed to indemnify Dicex is without merit. *See Remedy Intelligent Staff*, 2017 WL 4440484, at *4 (noting that Remedy's assertion of an "implied agreement arising out of the course of performance" lacks merit "because by definition an 'implied agreement arising from a course of performance' is not an executed written agreement for purposes of section 417.004").

We conclude that because the agreement does not mention indemnity much less contain an express indemnity clause, it does not satisfy section 417.004's requirement of "a written agreement with the third party to assume the liability." As such, the agreement is insufficient to show Amigo

expressly assumed liability to indemnify third parties for injuries to its employees. *See Lee Lewis Constr., Inc. v. Harrison*, 64 S.W.3d 1, 20 (Tex. App.—Amarillo 1999), *aff'd*, 70 S.W.3d 778 (Tex. 2001) ("Equally clear is that [the agreement] expressly mentions indemnification, the conditions which trigger the duty to indemnify, the party obligated to provide indemnity, and the party to be indemnified. . . . [Therefore,] 'the indemnity language in the contract between' LLC and KK 'is sufficient to show that . . . [KK] expressly assumed liability for injuries to its own employees.'").

### 2. Conclusion

We conclude Amigo established its entitlement to summary judgment as a matter of law on its defense that it is not liable to Dicex for reimbursement or damages as a result of any judgment or settlement in favor of Rodriguez.[3]

### AMIGO'S NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT

In its no-evidence motion for summary judgment on Dicex's breach of contract claim, Amigo alleged there was no evidence that (1) Amigo agreed to be contractually liable for all damages resulting to Dicex from an employee's suit, (2) Amigo was not properly insured against workplace injuries alleged by employees, and (3) Amigo contracted with Dicex for capable, experienced, fully-trained employees or, alternatively, that Amigo failed to provide such employees. On Dicex's negligent and/or reckless misrepresentation claim, Amigo alleged there was no evidence that: (1) Amigo represented to Dicex that Dicex was protected from assigned employee claims through the application of workers' compensation insurance and (2) Amigo represented to Dicex that Rodriguez was a capable, experienced, fully-trained forklift operator or,

---

[3] Because of our disposition, we need not address whether the trial court properly rendered a traditional summary judgment in favor of Amigo on its assertion that Dicex's misrepresentation claim is barred by the statute of limitations. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

alternatively, that any such representation was untrue or made with reckless disregard. Finally, Amigo alleged there was no evidence Dicex was entitled to contribution against Amigo or that the contract contained any language requiring Amigo to indemnify Dicex.

## A. Standard of Review

A party is entitled to a no-evidence summary judgment if, "[a]fter adequate time for discovery, . . . there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." TEX. R. CIV. P. 166a(i). The trial court must grant a no-evidence motion for summary judgment unless the nonmovant produces evidence raising a genuine issue of material fact. *Id.* "A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). "On the other hand, '[w]hen the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence.'" *Id.* at 601 (citations omitted). More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.* at 601. In determining whether the nonmovant has produced more than a scintilla of evidence, we view the evidence in the light most favorable to the nonmovant and disregard all contrary evidence and inferences. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

## B. Breach of Contract

Dicex alleged Amigo breached the contract by (1) failing to provide "the workers' compensation insurance that was or should have been obtained by Amigo pursuant to their" TES agreement, and (2) by providing a forklift operator (Rodriguez) who lacked adequate experience, capability, and training. To satisfy its burden to produce evidence raising a genuine issue of

material fact on its breach of contract claim, Dicex points to the agreement and the affidavit of Alberto Aranda, Dicex's Director of Quality and Certifications and Human Resources Manager.

### 1. Failure to provide insurance for Dicex's benefit

As discussed above, the TES agreement unambiguously states that Amigo will provide certain levels of coverage, including workers' compensation insurance for its employees. However, nowhere in the agreement does Amigo contractually agree to include Dicex as an insured or otherwise protect Dicex from suit. Therefore, the TES agreement is insufficient to raise a genuine issue of fact. Aranda's affidavit likewise is insufficient to raise a genuine issue of fact because it is conclusory. His affidavit states:

> That [TES] agreement expressly provided, as part of the markup fees paid to Amigo Staffing, Inc., insurance coverage for commercial general liability and workers compensation insurance of $2,000,000.00 for each of such insurance policies, as well as surety bond of $10,000.00 for criminal acts of the employees, with theft of client's merchandise in mind for such surety bond. *The obvious purpose of the inclusion of such insurance coverage in the agreement, as discussed in negotiations, was to protect Dicex International, Inc., from claims by employees through workers compensation insurance*, and from commercial claims from third parties such as clients for their merchandise, through commercial general liability insurance. It was so represented by Amigo Staffing, Inc., and pursuant to the Agreement it was incumbent upon Amigo Staffing, Inc., to ensure that Dicex International, Inc., was fully covered and protected. The only disclaimer was for vehicle related liability to third parties for harm caused by Amigo Staffing, Inc.'s employees in the scope of employment with Dicex International, Inc., for which Dicex had to obtain vehicle liability insurance, and indemnify Amigo Staffing, Inc., from any such claims by third parties. [Emphasis added.]

Affidavits containing unsubstantiated factual or legal conclusions that are not supported by the evidence are not competent summary judgment proof because they are not credible or susceptible to being readily controverted. *See Ryland Grp. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (per curiam). Therefore, Aranda's conclusion that the TES agreement was intended to protect Dicex is not competent summary judgment evidence.

## 2. Failure to provide employees with adequate experience, capability, and training

In its response to Amigo's no-evidence motion for summary judgment, Dicex alleged as follows:

> The fact is that it is [Rodriguez who] is claiming against Dicex that he was improperly trained. That claim is before the Court and the Court can take judicial notice of it. Certainly, Dicex, as the defendant, is controverting and disagrees with that claim. Nonetheless and to the extent Dicex is held liable for such claim by [Rodriguez], it was Amigo's contractual duty to Dicex to assess [Rodriguez's] skills as a forklift operator before being assigned to Dicex. The agreement states what it states, and the outcome of Plaintiff's claims against Dicex will be what will be.

Other than alleging that Rodriguez contends he was not properly trained, Dicex points to no evidence (1) that Amigo contractually agreed to verify Rodriguez's experience or to assess his skills or (2) that Rodriguez was, in fact, not properly trained.

## C. Misrepresentation Claims

Dicex alleged Amigo made the following misrepresentations: (1) Dicex was protected from assigned employee claims through the application of workers' compensation insurance and (2) Rodriguez was an experienced, capable, and fully-trained forklift operator. In response to the no-evidence motion, Dicex merely alleged (1) that "[t]he agreement clearly states that workers' compensation insurance would be provided, and Alberto Aranda attests that such was discussed and agreed during the negotiation of the [TES] agreement" and (2) "[w]hat is undisputed is that there is an agreement that bounds Amigo to assess skill for assigned employees such as [Rodriguez], and if it turns out that [Rodriguez] was not skilled enough, then Amigo incurred [sic] in a misrepresentation by assigning [Rodriguez] as a forklift operator." For the same reasons as above, we conclude Dicex's reliance on the TES agreement and Aranda's affidavit are insufficient to raise a genuine issue of fact.

**D.      Conclusion**

On this record, we conclude Dicex failed to satisfy its burden in response to Amigo's no-evidence motion for summary judgment on Dicex's claims. Accordingly, the trial court properly rendered a no-evidence summary judgment on Dicex's causes of action for breach of contract and misrepresentation.

## CONCLUSION

For the reasons stated above, we conclude the trial court properly rendered a take-nothing summary judgment in favor of Amigo on all of Dicex's causes of action.[4]

Lori I. Valenzuela, Justice

---

[4] Dicex asserted it was entitled to contribution against Amigo for Amigo's percentage of responsibility for Rodriguez's damages pursuant to Chapter 33 of the Texas Civil Practices and Remedies Code. On appeal, Dicex does not challenge the trial court's summary judgment in favor of Amigo on this claim.